## THE STATE *versus* ISAAC C. MCALLISTER.

Testimony, then irrelevant, may with propriety be admitted, under the expectation that it will be connected with the case by other testimony, to be laid out of the case unless so connected as to become relevant.

Testimony, having a tendency to prove the issue, is admissible for the consideration of the jury, although alone it might not justify a verdict in accordance with it.

On the trial of an indictment for passing counterfeit bank bills, knowing them to be such, testimony that the accused passed similar bills about the same time to other persons, is admissible, to show the *scienter*.

By the Rev. Stat. c. 1, § 2, all acts of incorporation are made public statutes, and the Court will judicially take notice of them.

In a criminal trial, an unnecessary omission on the part of the accused to offer evidence which might operate in his favor, if attainable, is a circumstance which the jury may consider, with other evidence in the case; and under this principle, the omission of the accused to furnish evidence of his previous good character, may be called to the consideration of the jury in support of the prosecution.

EXCEPTIONS from the Middle District Court, REDINGTON J. presiding.

The exceptions state that this was an indictment for uttering and passing counterfeit bills, purporting to be of the Augusta Bank, viz., three bills of three dollars each, and one bill of one dollar.

The County Attorney introduced George W. Allen as a witness, (who testified, without objection, that he was cashier of the Augusta Bank,) and showed him a bill purporting to be of the Washington Bank, Boston, and inquired, if he knew the difference between the true and counterfeit bills of that bank. He testified that he did; that he had never seen the president or cashier write; that he knew their writing, as by having seen it on the bills of the bank. The County Attorney then asked him if the bill shown him was true or counterfeit. The defendant objected to the testimony. The objection was overruled, and the witness said the bill was counterfeit. But as no testimony was offered connecting the defendant with the bill, the bill did not go to the jury. The objection to Mr. Allen's testimony was, that he had not sufficient knowledge of

the difference between the true and the counterfeit bills, and his testimony was admitted, in expectation that the prosecuting officer would connect the bill with the case.

Said Allen further testified, that the bills described in the indictment, were received by him from Miss Susan Fisher, to whom it was alleged the defendant passed them; that he received them on the 13th of December, in the evening; that afterwards, the same evening, he showed them to Carleton Dole, and Thomas W. Smith and Mr. Scruton, who severally examined them; that at Dole's house and at Smith's house, they were laid upon a table; that afterwards, the same evening, he carried them to Mr. Bradbury's office; that they were there laid on the table, and examined by several persons, but he testified that said bills were not at any time out of his sight, or that he believed they were not; that the next day he put upon them the letters S. F. and placed them in the vault of the bank, and afterwards put upon them the other writing now upon them; and that he now knows them to be the same bills, which he received of Miss Fisher.

Joseph Nudd, called by the County Attorney, testified, that he was present in said Bradbury's office, when said Allen had the bills there in the evening of December 13th; that said bills were laid upon the table by said Allen; that there were as many as a dozen persons there; that said bills were examined by some of them, (while said Bradbury was making the warrant to arrest the defendant,) being passed from one to another; that said bills were by several of the persons compared with other bills to ascertain if counterfeit. The defendant contended, that this was not sufficient evidence for the jury to find that the bills introduced in evidence were the bills which said Allen received of Miss Fisher. The Court instructed the jury that they would be justified in finding that they were the same bills, if from said testimony, they were satisfied of that fact. Miss Fisher had previously testified that she delivered to Mr. Allen the bills which the defendant passed to her. Allen Wing, called by the County Attorney, testified that on the 13th December, he received from his wife two bills of the

Augusta Bank of three dollars each; that he put marks upon them; on one a single cross, and on the other a double cross, on the opposite corners of said bills; that he delivered said bills to the magistrate, who examined the defendant on the 16th of December, and has not had them since. The County Attorney offered in evidence two bills, resembling those marked by said Wing, but which said Wing said he would not swear to be the same. He testified that they resembled them; "that there are the marks and these the bills according to the best of his knowledge." Defendant contended that said evidence was not sufficient to prove that the bills so offered were the same which Wing received of his wife. But the Court ruled that the jury were at liberty to find them to be the same, if the evidence satisfied them of that fact. There was evidence introduced by the State tending to show that the defendant, at Waterville, on the evening of 12th December, passed to Mrs. Wing a counterfeit three dollar bill of the Augusta Bank, with a view to show that the defendant, when he passed to Miss Fisher the bills set out in the indictment, knew that the same were counterfeit. Defendant objected to this evidence, but the Court admitted it.

Thomas W. Smith testified, without objection, that he was president of the Augusta Bank.

In the course of the trial the County Attorney stated, that he should then put in the evidence of the existence of the Augusta Bank. He opened a book of Statute Laws, and said, this is the Act incorporating the Augusta Bank; then a book of Statute laws, and said, this is the act extending the charter, and read the dates of said acts. He then took up a manuscript book, and said it contained the stockholders' vote of acceptance of the act extending the charter, and asked said Allen if it was the bank's book of records? He replied that it was. The said acts and vote were not read, nor did the said books go to the jury, nor was any thing further said at the trial or in the argument in relation to the legal existence of the bank. The Court instructed the jury, that if the defendant passed the bills described in the indictment, as there set forth;

and if said bills were counterfeit, and known at the time to be counterfeit, and he passed them with intent to defraud Miss Fisher, they should find a verdict against the defendant. The defendant not having offered any evidence of good character, the County Attorney was, in his closing argument, proceeding to urge that circumstance upon the jury, as contributing to strengthen the case on the part of the State. The defendant objected to the offering of that argument to the jury. But the Court permitted it to proceed, and instructed the jury that said circumstance was proper for their consideration. The verdict was against the defendant.

To these several instructions and rulings, the defendant excepted.

*Wells* argued for McAllister. The objections taken are stated in the opinion of the Court.

In support of his first objection, he cited Rev. Stat. c. 157, § 10. In aid of his second, *Commonwealth* v. *Kinison*, 4 Mass. R. 646. And under his fifth, 2 Stark. Ev. 366.

*Paine*, County Attorney, replied, in behalf of the State, to the several objections; and cited *Commonwealth* v. *Turner*, 3 Metc. 119; Rosc. Cr. 18; Greenl. Ev. 53; *Coffin* v. *Collins*, 17 Maine R. 440; *State* v. *Merrick*, 19 Maine R. 398.

The opinion of the Court was drawn up by

Tenney J. — This was an indictment for uttering and passing certain counterfeit bills purporting to be of the Augusta Bank, tried in the District Court. Several exceptions were taken to the rulings and to the instructions to the jury of the Judge; and we proceed to examine such as have been relied upon in the argument.

1. It is insisted, that George W. Allen, the cashier of the Bank, was improperly admitted to testify to his knowledge of the difference between the true and the spurious bills of the Washington Bank, situated in Boston, and that the bill purporting to be of that Bank, shown to him, was counterfeit. The Rev. Stat. c. 157, § 10, makes admissible the testimony of a witness, acquainted with the signatures of the President

and the Cashier, or having knowledge of the difference between the true and the counterfeit bills of a bank, to prove that the same are forged or counterfeit, when such officers reside out of the State, or more then forty miles from the place of trial. This evidence was admitted in the expectation of the Judge, that it would be connected with the case, and we do not perceive that it was improper, when ruled to be admissible. It did not become material, which could not have been foreseen, when the witness testified.

2. It is urged that Mr. Allen's testimony, touching the identity of the bills, should have been excluded. He testified that the bills were shown by him to several individuals, and at different places, but that they were not at any time out of his sight, or that he believed they were not, and that he knew they were those which he received from the person, who testified that she delivered to him the bills, that the defendant passed to her. This was evidence proper to go to the jury, and was of the same kind, for the want of which the verdict was set aside in the case of *Commonwealth* v. *Kinison*, 4 Mass. R. 646, cited by the defendant's counsel.

3. The evidence of Mrs. Wing, that the defendant passed to her a counterfeit bill, purporting to be of the Augusta Bank, about the time, when it was in evidence that those in question were passed by him, was undoubtedly proper, with a view to show that he knew them to be counterfeit. Such evidence has for a long time been held admissible. 2 Stark. Ev. 378 and 581, note (c.)

4. On the question of the existence of such a corporation as that of the Augusta Bank, one person testified that he was the President, and another that he was the Cashier thereof, without objection. A certain book produced was proved to be the bank's book of records. Certain books were offered as volumes of the statutes, which were said by the county attorney to contain the act of incorporation, and act extending the charter of the Augusta Bank, though no acts were read. No objection was made to the sufficiency of this evidence, nor was the Court requested to rule thereon. Rev. Stat. c. 1, § 2,

make all acts of incorporation public statutes, and such, courts notice judicially. The evidence upon this point was *prima facie* sufficient. The extended charter had not expired, and the fact that there was a president, cashier and book of records was proof that the charter had been accepted.

5. The defendant not having introduced evidence of good character, the attorney for the State was permitted to urge that circumstance to the jury, against the objection of the defendant's counsel, and the Judge instructed the jury, that the circumstance was proper for their consideration. It is a rule of law, as is contended, that every man's character is presumed to be good, till the contrary is proved; and that no evidence of bad character shall be admitted against the accused, till he has attempted to prove it good; but *he* may adduce such proof. This is upon the ground, that positive evidence adds to and tends to strengthen legal presumption. "Proof of good character may sometimes be the only mode, in which an innocent man can repel the presumption of guilt;" and, this notwithstanding the legal presumption of good character in his favor. *State* v. *Merrick*, 19 Maine R. 398. In a criminal trial, in which the character of acts depend upon the intention which prompted them, evidence of high character in the accused for integrity and uprightness, would tend strongly to excite doubts in the mind of the jury, unless the evidence was of a conclusive character. Every one is presumed to wish to offer evidence which can operate in his favor, if it is attainable; and it is a settled principle, that unnecessary omission to do this, is a circumstance, which the jury may consider with other evidence in the case; and we are not aware that the failure to produce proof of good character, in a case, where it is allowed, can form an exception. The Judge left the circumstance to be weighed by the jury, declaring no legal rule which would control their judgment. It was to have only such influence as was reasonable and just upon honest and unbiassed minds.

*Exceptions overruled.*