# Griffin v. The State.

## *Murder.*

(Decided June 30, 1909. Rehearing denied Dec. 16, 1909.—50 South. 962.)

1. *Courts; Terms; Time for Trial.*—The provision of Acts 1886-7, p. 183, in so far as they refer to Perry county merely gives preference to criminal cases during that week, and does not prevent the trial of a criminal case during the first week of the term.

2. *Jury; Selection.*—The drawing of a name from a box by the commissioners and a selection by the commission from the names thus drawn of the grand and petit juries, and the assigning of such names to serve on either venire, while irregular, is not grounds for quashing the venire, in the absence of fraud, in the light of section 7256, Code 1907.

3. *Homicide; Self-Defense; Evidence.*—Where it appeared that before the killing defendant exhibited to the deceased an anonymous letter purporting to have come from some member of the deceased family containing threats against defendant's family, the authorship of which deceased denied, and such letters were admitted in evidence under defendant's plea of self defense, it was competent to show in rebuttal, the authorship of the letter for the purpose of showing that deceased had no connection with sending it.

4. *Same; Instructions.*—An instruction on self-defense which omits any hypothesis of belief, reasonably and honestly entertained by defendant, of imminent danger and the necessity to kill, are properly refused.

5. *Same.*—Charges upon self-defense asserting that defendant had a right to protect himself by taking the life of deceased if such protection could not be otherwise secured, omit defendant's

[Griffin v. The State.]

duty to retreat if he could do so without increasing his peril, and are properly refused.

6. *Same.*—Where it appeared that before the killing defendant approached deceased and exhibited to him a threatening letter purporting to have emanated from some member of deceased's family and containing threats against defendant's family, a charge asserting that if defendant approached deceased in a peaceable manner and asked him if he knew anything about the letter, this would not put defendant at fault in bringing on the difficulty, was properly refused as invasive of the province of the jury, and as misleading where there was evidence of ill feeling between the families, since the act of defendant in approaching the deceased on that subject might have been construed into a threat, regardless of his manner.

7. *Same.*—Where there was conflict in the evidence as to who was the aggressor, a charge asserting that if deceased was a man whose general character was violent, turbulent and blood-thirsty, and he made a hostile demonstration towards the defendant, then the defendant had the right to act more promptly to protect himself from injury than if such hostile demonstration had been made by a man who was not of general bad character, etc., was properly refused.

8. *Charge of Court; Asserting Fact.*—Instructions which assert that there is no evidence as to particular fact, are properly refused.

9. *Same; Undue Prominence.*—Instructions which give undue prominence to certain facts or certain phases of the evidence, are properly refused.

10. *Same; Argumentative.*—A charge asserting that no exact definition of an overt act can be given; that it may be a motion. a gesture, conduct or demonstration, or anything else that evidences a present design to take the life of a person or to do him great bodily harm; trifles, light as air when viewed alone may become fraught with deadly meaning when viewed in connection with all the preceding facts disclosed and with all the evidence in the case, is argumentative.

11. *Same; Character; Presumption.*—No presumption is indulged in law as to a defendant's character being either good or bad.

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

John Griffin was convicted of murder, and he appeals. Affirmed.

The facts sufficiently appear in the opinion of the court. The following charges were refused to the defendant:

"(2) In deciding on the guilt or innocence of defendant, if you believe from the evidence that he did not fight willingly, and that he was free from fault in bring-

ing on the difficulty, and could not retreat without having increased his peril, and come to consider whether the defendant was actually in danger of death or great bodily harm, or whether the circumstances surrounding him were such as to create in the mind of a reasonable man, and did create in the mind of defendant, the honest belief that he was in danger of death or great bodily harm, you should determine what an ordinary and reasonable man might have fairly inferred from all the facts and circumstances by which the evidence showed that the defendant was at the time surrounded, and in doing so must not try him in the light of subsequent developments; nor must they require of him the same cool judgment that the jury can now bring to bear on the occurrence. The jury must put themselves as far as possible in the defendant's place, and then judge whether the danger was apparent, or should have been considered apparent, by a man of ordinary caution and prudence in like conditions. The danger to life or great bodily harm need not have been real, present, or urgent at the very moment of the killing, but only apparently so. The question is, Was the danger apparently so imminently present at the time of the killing that a reasonable man and a prudent man situated as Griffin was would believe that it was necessary to kill in order to avoid the loss of life or to prevent great bodily harm; and if, from all the evidence in the case, the jury have a reasonable doubt whether such was the case when the defendant killed Hughey, then if you believe defendant is free from fault in bringing on the difficulty, and did not fight willingly, and could not retreat without increasing his peril, you must acquit him.

"(3) There is evidence in the case tending to show that the defendant was in imminent danger, real or apparent, of death or great bodily harm from Hughey at

the time he fired; and if you believe from the evidence that he was in such imminent danger, real or apparent, and that he was free from fault in bringing on the difficulty, and could not retreat without increasing his peril, and did not fight willingly, you must acquit him.

"(4) If the jury believe from the evidence that the defendant had reasonable apprehension of great personal violence, involving imminent peril to life or limb, then he had a right to protect himself by taking the life of Jeffie Hughey, if such protection could not otherwise be procured, and they must acquit the defendant unless they find that the defendant was not free from fault in bringing on the difficulty.

"(5) If the jury have a reasonable doubt as to whether or not the act was done maliciously, then they must acquit the defendant.

"(6) There is evidence in this case tending to show that the defendant at the time of the shot could not retreat without increasing his peril; and if you believe from the evidence that he could not retreat without increasing his peril, and was free from fault in bringing on the difficulty, and was in imminent danger, real or apparent, of death or great bodily harm from Hughey at the time, you must acquit him.

"(7) If you believe from the evidence that the defendant approached the deceased in a peaceable manner, and in a peaceable manner asked him if he knew anything about the letter which has been offered in evidence as the letter shown the deceased by the defendant at the time of the killing, I charge you that this would not put the defendant at fault in bringing on the difficulty.

"(8) I charge you that there is evidence in this case that it was communicated to Griffin before the killing that Hughey had made threats against the defendant's life. The evidence goes to aid you in determining, if you

[Griffin v. The State.]

believe it whether the defendant or the deceased was the aggressor, and whether defendant reasonably entertained the honest belief that he was in imminent danger of death or great bodily harm; and if you believe that such threats were communicated to the deceased before the killing, and contributed to creating in the mind of the defendant the reasonable and honest belief that he was in imminent danger of death or great bodily harm, if he did entertain such belief, and if a reasonable man, situated as the defendant was, would have entertained such belief, it is immaterial whether such threats were so or not.

"(9) I charge you, gentlemen of the jury, that there is evidence tending to show that the defendant was free from fault in bringing on the difficulty; and if you believe from the evidence that he was free from fault in bringing on the difficulty, and was at the time he shot in imminent danger of death or great bodily harm from Hughey, and could not retreat without increasing his peril, and did not fight willingly, then, I charge you, you must acquit the defendant.

"(10) I charge you, gentlemen of the jury, that there is evidence in this case tending to prove that the defendant acted in self-defense, as I have defined self-defense to you in my general charge; and, if after considering all the evidence in the case, you have a reasonable doubt as to whether the defendant acted in self-defense, as I have defined to you in my general charge, you must acquit him.

"(11) I charge you, gentlemen of the jury, that the design, real or apparent to kill the defendant, or to do him some great personal injury, and the danger, real or apparent, of the execution of such design by the deceased to cause the killing, must be manifest by some overt. act, conduct, or behavior of deceased at the time of the

killing, indicating to the defendant, situated as he was, such design and danger; but what shows such design, real or apparent, or such danger, real or apparent, are not matters of law for the court to decide, but are matters of fact to be determined by the jury according to all the evidence in the case. No exact definition of an overt act can be given. It may be a motion, a gesture, conduct or demonstration, or anything else which evidences reasonably a present design to take the life of the defendant, or to do him great bodily harm. Trifles, light as air when viewed alone, may become fraught with deadly meaning when viewed in connection with all the preceding facts disclosed and with all the evidence in the case.

"(12) I charge you, gentlemen of the jury, that there is no evidence in this case tending to prove the general bad character of John Griffin, and in the absence of such evidence the law presumes that he is a man of general good character, and that the presumption of a good character goes with him to the jury as a matter of evidence, and may be considered by you, in connection with all the other evidence in the case. It may be sufficient to create in your mind a reasonable doubt of the defendant's guilt requiring his acquittal.

"(13) If the jury believe from the evidence that on the day of the fatal difficulty the defendant approached the deceased in a peaceable manner for the purpose of adjusting or explaining the previous difficulties, or getting explanations from the deceased, and for such purpose showed him the letter admitted in evidence in this cause, and thereupon there arose a controversy between the deceased and the defendant, and the defendant was without fault in bringing on the difficulty, and did not fight willingly, and that the deceased made a demonstration such as to create in the mind of a reason-

able man the honest belief that defendant was in imminent danger of death or great bodily harm, and that it was necessary to shoot in order to protect himself from such danger, even though such danger was not real, but was apparent only, and there was no reasonable way of escape or retreat without increasing his peril, and it did create such honest belief in the mind of defendant, even though such danger was not real, but only apparent, and that there was no reasonable way of escape or retreat without increasing his peril, and that thereupon under such circumstances the defendant shot and killed the deceased, then the defendant would not be guilty.

"(14) If the jury believe from the evidence that Jeffie Hughey was a man who had the general character in the community in which he lived as that of a quarrelsome, violent, and turbulent man, and as that a man who went habitually armed, and for two or three years prior to the fatal difficulty he had numerous difficulties with the defendant, and made numerous threats against the defendant to take his life, or to do him great bodily harm, and that such threats and difficulties continued up to a short time before the fatal difficulty, and that on the day of the fatal difficutly the defendant approached the deceased in a peaceable manner for the purpose of adjusting the previous difficulty, or of getting such explanation from the deceased, and for such purpose showed him the letter admitted in evidence in this cause, and that thereupon there arose a controversy between the defendant and the deceased, and that the defendant was without fault in bringing on the difficulty, and did not fight willingly, and that the deceased then and there made a demonstration such as to create in the mind of a reasonable man the honest belief that the defendant was in imminent danger of death or great

bodily harm at the hands of deceased, and that it was necessary to shoot in order to protect himself from such danger, even though such danger was not real, but only apparent, and that it did create such honest belief in. the mind of defendant, even though such danger was not real, but only apparent, and that there was no reasonable way of escape or retreat without increasing his peril, and that thereupon, under such circumstances, the defendant shot and killed the deceased, then the defendant would not be guilty.

"(15) I charge you, gentlemen of the jury, that if you believe from the evidence that Jeffiie Hughey was a man whose general character was that of a violent, turbulent, and bloodthirsty man, that if you believe from the evidence that Jeffie Hughey made a hostile demonstration towards the defendant, I charge you that the defendant had a right to act more promptly to protect himself from injury than if such hostile demonstration had been made by a man who was not of general bad character for violence, turbulence, or bloodthirstiness.

"(16) If the jury believe from the evidence that on the day of the fatal difficulty the defendant approached the deceased in a peaceable manner for the purpose of adjusting or explaining previous difficulties, or of getting some explanation from the deceased, and showed him the letter in evidence in this cause, and that thereupon there arose  a controversy between the deceased and the defendant, and that the defendant was without fault in bringing on the difficulty, and did not fight willingly, and that the deceased then and there made a demonstration such as to create in the mind of a reasonable man the honest belief that the defendant was in imminent danger of death or great bodily harm at the hands of the deceased, and that it was necessary to shoot

to protect himself from such danger, even though such danger was not real, but only apparent, and that it did create such honest belief in the mind of defendant, even though such danger was not real, but only apparent, and that there was no reasonable way of escape or retreat without increasing his peril, and that thereupon under such circumstances the defendant shot and killed the deceased, then the defendant would not be guilty; and the court further charges the jury that if you believe from the evidence that the deceased, Jeffie Hughey, had the general reputation in the community in which he lived as that of a violent, turbulent and quarrelsome man, and as that of a man who habitually went around armed, and that such reputation was known to the defendant, and that for several years prior to, and up to a short time before, the fatal difficulty, deceased had had numerous difficulties with the defendant, and had made numerous and deadly threats against him, the jury may consider these facts, in connection with all other evidence in the case, in determining who was at fault in bringing on the difficulty which resulted in the killing, and in determining whether or not the circumstances were such as to create in the mind of a reasonable man the honest belief that the defendant was in imminent danger of death or great bodily harm at the hands of the deceased, and that it was necessary to shoot in order to protect himself from such danger, and as to whether or not it did create in the mind of defendant such honest belief, even though such danger was not real, but only apparent.

"(17) I charge you, gentlemen of the jury, that the laws of this state, as well as the laws of nature, give every man the right to defend himself from death or great bodily harm, by killing the person from whom the danger proceeds, if that be necessary to his protection.

and this right is not given to a man by law, but is a right that exists independent of law, except in so far as the law has restricted it for the good of society, and on the exercise of this right the law has placed these three restrictions: (1) The defendant must be free from fault in bringing on the difficulty, and I charge you that if, in the discussion or talk between the defendant and the deceased, the defendant was not the aggressor, but only used quarrelsome words in reply to quarrelsome words used by the deceased, if you believe from the evidence he did such, and did not fight willingly or by his voluntary consent, then he would be free from fault in bringing on the difficulty. And I charge you, further, that if you believe from the evidence that the defendant believed or thought that the deceased knew or might know something about the letter offered in evidence as the letter shown to the deceased by the defendant at the time of the killing, then the defendant had the right to ask the deceased in a peaceable manner if he knew anything about it, and that would not be considered by the law as putting the defendant at fault in bringing on the difficulty. And if you believe from the evidence that the defendant knew or believed that deceased was armed, and so knowing and believing, armed himself, not with the intention to provoke a difficulty, but to protect himself, then I charge you that the defendant had a right to arm himself for his protection without incurring the penalty of being considered at fault in bringing on the difficulty. (2) The defendant must have been, at the time he fired the fatal shot, either actually and really in imminent danger of death or great bodily harm, or the circumstances surrounding him at the time must have been such as to create the honest belief in the mind of a reasonable man that he was in imminent danger of death or great bodily harm. And if you believe from the

[Griffin v. The State.]

evidence that the defendant was not actually in such danger, then he would have the same right to act as if the danger had been actual, if you believe, from the circumstances surrounding the transaction, that they were such as to create in the minds of a reasonable man, and did create in the mind of the defendant, the reasonable and honest belief that he was in such danger. I further charge you that the question as to whether he was actually or apparently in such danger is to be determined by you after the consideration of all the evidence. I further charge you that, in determining whether the circumstances were such as to create a reasonable and honest belief in the defendant's mind that he was in such danger, you may look at the facts, if they be facts, in connection with all the other evidence, that the deceased was a man of violent and dangerous character, and habitually went armed, and had to the defendant's knowledge made threats to take his life. A man has the right to act more promptly and decisively in his defense, when a demonstration has been made against him by a man of dangerous character, than when such demonstration is made by a peaceable or timid man. (3) The defendant must have been so situated as not to be able to retreat without increasing his peril; and if you believe from the evidence that the defendant, as I have above explained to you, was, first free from fault in bringing on the difficulty, and, second, in imminent danger of great bodily harm, and, third, could not retreat without increasing his peril, and did not fight willingly, it is your duty to find him not guilty, and in that event the form of your verdict will be, 'We, the jury, find the defendant not guilty.' "

DE GRAFFENRIED & EVINS, for appellant. The admission of illegal evidence against accused will work a re-

versal unless it affirmatively appears that there was no injury.—*Cauley v. The State,* 92 Ala. 71; *Fonville v. The State,* 91 Ala. 39; *Maxwell v. The State,* 89 Ala. 164. Under these authoritities, the court erred in admitting evidence of the fact that Ella Hughey wrote and sent the letter introduced by defendant in evidence. The court erred in refusing charge 2.—*Abernathy v. The State,* 129 Ala. 85; *Thomas v. The State,* 106 Ala. 19; *Keith v. The State,* 97 Ala. 32. Charges 3, 6, 8, 9 and 10, assert principles of law.—*Harris v. The State,* 96 Ala. 28; *Roberts v. The State,* 68 Ala. 156; 6 Ency. of Evi. 785. Charge 7 should have been given.—*Newman v. The State,* 69 S. W. 519; *Massey v. Commonwealth,* 29 S. W. 871. Charge 11 should have been given.—*Hood v. The State,* 27 South. 642. Charge 12 is correct.— 22 A. & E. Ency. of Law, 1284, and note 10. The 15th charge should have been given.—*Roberts v. The State,* 68 Ala. 156; *Karr v. The State,* 100 Ala. 6. The 17th charge should have been given.—*Gray v. Combs,* 7 J. J. Marshall, 478; *Howell's Case,* 77 Ala. 383; *McEwin's Case,* 152 Ala. and authorities supra.

ALEXANDER M. GARBER, Attorney General, for the State. The court committed no error in setting the case for trial the first week of the term.—*Goley v. The State,* 87 Ala. 57; *Smith v. The State,* 98 Ala. 55; *Hall v. The State,* 130 Ala. 45. The court properly overruled the motion to quash the venire.—*Thompson v. State,* 122 Ala. 12. Counsel discuss errors assigned on evidence, but without citation of authority. Charges 2, 7, 11, 13, 14, 16 and 17 were argumentative.—*Lawson v. The State,* 46 South. 259. Charges 3, 6, 8, 9 and 10, either single out a part of the evidence or give undue prominence to particular phases, or assert that there is no evidence of a particular fact.—*Anderson v. The State.*

49 South. 460. Counsel discuss the other charges, but without citation of authority.

SAYRE, J.—On Monday, the first day of the term, the court fixed the trial of the indictment against the defendant for the following Thursday. The act approved November 22, 1886 (Acts 1886-7, p. 183), provides that the criminal docket of the circuit courts in Perry and other counties therein named shall be taken up on Monday of the second week of each term. The defendant made this statute the basis of an objection and exception to the recited action of the court. The contention is that the statute is mandatory, and that, therefore the court was without jurisdiction to try the defendant on a day of the first week.. In *Goley v. State,* 87 Ala. 56, 6 South. 287, it was held that a Code provision, identical in every substantial particular with the statute in question, meant only that the criminal docket should be taken up on the second Monday of the term to the exclusion of civil business, but did not deny the court the right to proceed with the trial of criminal cases before that time. We are satisfied with the authority of that case.—*Hall v. State,* 130 Ala. 45, 30 South. 422.

In support of a motion to quash the venire summoned for the trial of his case, the defendant showed to the court by one of the jury commissioners of Perry county that the jury commission had, at a regular sitting for drawing grand and petit jurors, drawn from the jury box the names of jurors, including that part of the venire for the trial of the cause which was composed of the regular jury impaneled for the first week of the court, in manner following: When a name was drawn out of the box, the commission would decide among themselves whether the man would make a good juror

to serve on the grand jury, or a good juror to serve on the petit jury, and the juror would be assigned to one or the other, as he was, in the opinion of the commission, better suited to serve on one or the other. No fraud in the drawing of the juries was charged or shown. Admitting the effect of the last clause of section 7256 of the Code of 1907 to be that it renders innocuous any objection taken to any venire facias for a petit jury, except for fraud in drawing or summoning the jurors, the argument for a reversal on the exception just here in hand is that there was no drawing, but a deliberate selection of jurors prejudicial to the defendant, in that some of the most intelligent and upright men, presumably selected for the grand jury because they were such, might have been upon the petit jury summoned for the trial of defendant, but for their selection as grand jurors. If it be admitted that the argument of prejudice here insisted on was more than a mere speculation, it must be conceded that the method of selection practiced was irregular, and not in strict conformity to statutory direction. But we cannot concede that there was no drawing, nor even that the absence of drawing, omitted in a bona fide effort to accomplish the purpose of the statute, would be fatal to the venire, or the jury organized under it. Who should be jurors appears to have been determined by the drawing, though their distribution to grand and petit juries was determined otherwise. In any event, the irregularity, in the absence of fraud, is saved by the statute. The section (7248) providing the method of drawing juries, grand and petit, is found in the same chapter of the Code of 1907 with section 7256. The last named section enacts that "the provisions of this chapter in relation to the selection, drawing, and summoning of jurors are merely directory; * * * and no objection can

be taken to any venire facias for a petit jury, except for fraud in drawing or summoning the jurors." We cannot assume that the full import of this statute was not understood or intended by the Legislature when it was adopted. The plain wording of the statute over-rules the objection taken by the appellant.—*Thompson v. State*, 122 Ala. 12, 26 South. 141; *Childress v. State*, 122 Ala. 21, 26 South. 162.

The state's testimony showed that, immediately before the shooting which resulted in the death of Jeffie Hughey, the defendant approached deceased and exhibited to him a letter, asking him if he knew anything about it. The letter was anonymous, and was addressed to N. A. Griffin. It contained threats against the Griffins generally, and against the defendant and a female member of the family (whose exact relation with defendant does not appear) in particular. The threats conveyed by the letter purported to come from the Hugheys generally, and others. Witnesses for the state, and defendant himself, testified that the deceased denied to defendant any knowledge of the letter. After the interchange of a very few angry words the shooting followed. The evidence was conflicting whether at the time of the fatal shot the attitude of the deceased was indicative of offensive purpose. During the cross-examination of a witness for the state, the defendant offered the letter in evidence. Thereafter the state brought forward as a witness, a female relative of the deceased, who was permitted to testify, over defendant's objection, that she had written the letter and that the deceased had no agency in procuring it to be written, nor any knowledge that the witness had written it. The appellant argues that the fact of the authorship of the letter was foreign to any issue in the cause, and its admission in evidence was calculated to cause the jury to

view more harshly the act of the defendant in calling the attention of the deceased to the letter. But to this argument we do not assent. The letter was a threat purporting to emanate from the family to which deceased belonged and directed against the defendant, and so capable of pertinent construction as a threat by the deceased against the defendant. When the defendant, under his plea of self-defense, offered the letter in evidence notwithstanding the denial of the deceased that he was responsible for it, he affirmed by his offer the responsibility in some sort of the deceased, notwithstanding his denial. On no other theory did it have any relevancy to the issue being tried. The letter, then, having been introduced by the defendant as a threat to show the mental attitude of the deceased towards him at the time of the homicide—for so it must be taken—it was competent for the prosecution to show that the deceased had no connection with the writing or sending of the letter, as a fact tending to rebut the inference of hostile temper on his part which the jury might draw from the letter if not thus explained. Being entitled to show that deceased was not responsible for the letter, the state was not limited in proof to the denial of the deceased, but might support that denial by other evidence to the same effect.

Charge 2 refused to the defendant was faulty in that part of it which said: "The question is, was the danger apparently so imminent and present at the time of the killing that a reasonable man and a prudent man situated as Griffin was would believe it was necessary to kill in order to avoid loss of life or to prevent great bodily harm; and if, from all the evidence in the case, the jury have a reasonable doubt whether such was the case when the defendant killed Hughey, then if you believe defendant was free from fault in bringing on the

difficulty, and did not fight willingly and could not re-
treat without increasing his peril, you must acquit
him." This was a summary or brief restatement of
what had been stated in the fore part of the charge, and
the jury would have had the right to treat this conclud-
ing summary as a complete statement of the law the
charge was intended to state. As such it was defective,
because it pretermitted any mention of the fact, neces-
sary to acquittal on the ground of self-defense, that the
belief of imminent danger and necessity to kill must
be honestly entertained as well as reasonable. "The
law requires that such belief must be both reasonable
and honestly entertained."—*Jackson v. The State*, 78
Ala. 471; *Storey v. State*, 71 Ala. 330; *McCain v. State*,
160 Ala. 37, 49 South. 361, and *Williams v. State*, 161
Ala. 521, 50 South. 59, both at the present term.

Charges 3, 6, 8, 9, and 10, among other things, assert
that there is evidence of certain facts. It has been fre-
quently held that courts cannot be required to declare
to juries that there is or is not evidence of particular
facts. Their business is to declare the law.—*Troup v.
State*, 160 Ala. 125, 49 South. 332, and authorities there
cited. Charges of the sort are also bad because they give
undue prominence to certain parts or phases of the evi-
dence. Appellant relies upon the authority of *Harris v.
State* 96 Ala. 24, 11 South. 255, in support of his conten-
tion that the refusal of these charges was error. There
are two reasons why that authority does not avail the
appellant. For one, the charge in that case did not un-
dertake to state the evidence, but the contradictory
statements, relied on for an impeachment of the wit-
ness, were stated in the charge with hypothesis. For
another, not affecting, however, charge 8, the eminent
judge who wrote the opinion in *Harris' Case*, in the la-
ter case of *Hale v. State*, 122 Ala. 85, 26 South. 236.

speaking of charges touching the credibility of witnesses, quoted *Roberts v. State,* 122 Ala. 47, 25 South. 238, which dealt with similar charges, as follows: "Charges 5 and 6, requested by defendant are not offensive to the rule against giving undue prominence to particular parts of the evidence, but come within the exception to the rule as laid down in the cases of *Harris v. State,* 96 Ala. 24 (11 South. 255), and *Smith v. State,* 88 Ala. 73 (7 South. 52)." In the last-named case of *Smith v. State* it was said that there was no desire to qualify the general principle that the jury should not be instructed to consider certain parts of testimony. A limited, exceptional class of cases was, however, recognized as not falling within the rule, and among them the case in which there is testimony of threats, communicated or uncommunicated, made by the person on whom injury was inflicted. We are not disposed at this time to inquire into the merit of the distinction drawn. It is sufficient in this case to say that the charges requested by the defendant, numbered 3, 6, 8, 9, and 10, were properly refused for one or the other, or both, the reasons indicated. The case in hand illustrates the vice of such charges. In successive charges the court is required to say to the jury that there is evidence of threats made by the deceased and communicated to the defendant, that the defendant was in imminent peril of life or limb, that he could not retreat without increasing his peril, that he was free from fault in bringing on the difficulty, and that he acted in self-defense. If these charges were not properly refused, then they might have been appropriately combined in one charge. At any rate, the jury would be expected to read them in connection with one another. Than such a charge, or such a series of charges, one or a series more palpably misleading and argumentative can hardly be conceived.

Charge 4, if not otherwise objectionable, was properly refused for that it pretermits the defendant's duty to retreat. The ambiguous statement that "he had a right to protect himself by taking the life of Jeffie Hughey if such protection could not otherwise be secured" cannot do service for a statement of the defendant's unequivocaal duty to retreat unless to do so would increase his peril.

Charge 7 predicates defendant's freedom from fault in bringing on the difficulty upon the fact that he approached the deceased in a peaceable manner, and in a peaceable manner asked him if he knew anything about the letter which had been offered in evidence. Defendant offered evidence to show numerous threats made by the deceased against him, of which he had been informed. Bad blood not only existed between the defendant and the deceased, but the letter, the divorce of the defendant and the sister of the deceased, and some other facts appearing in the record, go to show that the feeling included the families of both. Under these conditions the act of the defendant, in approaching the deceased on that subject, without regard to his mere manner, was capable of being construed as a threat. It was an implied assertion that the defendant at least suspected that the deceased was responsible in some way for an offensive anonymous letter. Such an assertion, such an uncovering of an old sore, however, disguised under a peaceable manner, was calculated to arouse anger and resentment, and it was for the jury to say whether it constituted fault in bringing on the difficulty. The doctrine that the plea of self-defense is not available to a defendant who is not free from fault in the creation of a necessity to take the life is "too important, too conservative of human life and of good order, to allow it to be frittered away."—*Johnson*

*v. State,* 102 Ala. 19, 16 South. 105. And in *McQueen v. State,* 103 Ala. 17, 15 South. 825, it is said that "the law admits no qualification of this requirement. The defendant must have been free from all fault or wrong doing on his part which had the effect to provoke or bring on the difficulty."—*Crawford v. State,* 112 Ala. 1; 21 South. 214. The charge invaded the province of the jury, was misleading, and was properly refused.

Charges 13, 14, 16, and 17 hypothesized substantially the same facts as charge 7 in respect to the manner in which the defendant approached deceased and added, "and that the defendant was without fault in bringing on the difficulty." These charges referred the issue of defendant's fault to the jury, but gave undue prominence to the facts hypothesized in the charges, pretermitted history of the previous relations between defendant and deceased as illustrating the purpose of the defendant, and were calculated to mislead the jury to the conclusion that on consideration of the facts stated in the charges, without more, they were authorized to find that the defendant was altogether free from fault.

It hardly needs to be argued that a charge is an argument and not a statement of law, which asserts that "no definition of an overt act can be given. It may be a motion, a gesture, conduct or demonstration, or anything else which evidences reasonably a present design to take the life of the defendant, or to do him great bodily harm. Trifles, light as air when viewed alone, may become fraught with deadly meaning when viewed in connection with all the preceding facts disclosed and with all the evidence in the case." Charge 11 was palpably bad.

It is the settled law of this jurisdiction that there is no presumption in respect to a defendant's character

[Griffin v. The State.]

being good or bad.—*Danner v. State,* 54 Ala. 127, 25 Am. Rep. 662; *Little v. State,* 58 Ala. 265; *Sullivan v. State,* 102 Ala. 135, 15 South. 264, 48 Am. St. Rep. 22. We are not inclined, for any reasons there appearing, to follow the adjudications of other states contrariwise. There was no error in the refusal of charge 12.

The defendant requested, and the court refused, charge 15, as follows: "I charge you, gentlemen of the jury, that if you believe from the evidence that Jeffie Hughey was a man whose general character was that of a violent, turbulent, and bloodthirsty man, that if you believe from the evidence that Jeffie Hughey made a hostile demonstration towards the defendant, I charge you that the defendant had a right to act more promptly to protect himself from injury than if such hostile demonstration had been made by a man who was not of general bad character for violence, turbulence, and bloodthirstiness. Appellant cited *Roberts v. State, supra,* and *Karr v. State,* 100 Ala. 6, 14 South. 851, 46 Am. St. Rep. 17, as authority in support of his argument that there was error in the refusal of this charge. These cases do assert the general proposition that, when one is assailed by another whose character is bad for violence, turbulence, and bloodthirstiness, more prompt and decisive means of defense are justifiable than if the assailant is of peaceable disposition; but they do not affirm the propriety of the charge in question in a case involving conflicting inferences as to who was the aggressor. If, as the state's evidence tended to show, the defendant was the aggressor, he could not justify his aggression, whether prompt or otherwise, by invoking consideration of responsive hostile demonstration on the part of the deceased. This aspect of the case is left out of view by the charge, and for this reason it was misleading and properly refused.

4—165

[Smith v. The State.]

We agree with counsel representing appellant that charge 5 was properly refused.

In the criticims we have made of the several charges, we must not be understood as affirming that they are free from fault in other respects.

The judgment of the trial court must be affirmed.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.