### PRICE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1914.)

#### No. 4017.

**1.** INDICTMENT AND INFORMATION (§ 125*) — DUPLICITY — ASSAULT WITH WEAPON ON MAIL CUSTODIAN.

A count in an indictment under the latter part of Cr. Code (Act March 4, 1909, c. 321) § 197, 35 Stat. 1126 (Comp. St. 1913, § 10367), charging that defendant attempted to rob a mail clerk of mail matter in his custody, and in the course of such attempt put the life of the clerk in jeopardy by the use of a dangerous weapon, is not duplicitous; the attempt to rob being an essential element of the offense of putting the life of the clerk in jeopardy, which must necessarily be charged.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

**2.** CRIMINAL LAW (§ 309*)—EVIDENCE—PRESUMPTION OF GOOD CHARACTER.

In a criminal case, where no evidence is offered in regard to defendant's character, there is no presumption that his character is good, which can be considered by the jury as evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 738; Dec. Dig. § 309.*]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Criminal prosecution by the United States against Frank Price. Judgment of conviction, and defendant brings error. Affirmed.

James C. Denton, of Muskogee, Okl., for plaintiff in error.

Frank Lee, of Muskogee, Okl. (D. H. Linebaugh, of Muskogee, Okl., on the brief), for the United States.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The defendant was indicted and convicted for a violation of section 197 of the Criminal Code, which reads as follows:

"Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal or purloin such mail matter or any part thereof, or shall rob any such person of such mail, or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if, in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

[1] The indictment contained two counts. The first is based upon the first part of the section, and charges the crime of assault with intent to rob, steal, and purloin mail matter. The second count is based on the latter part of the section, and charges the attempt to commit the crime of robbery, and that in the course of such attempt the defendant put the life of a mail clerk in jeopardy by the use of a dangerous weapon. The first assignment of error is based upon the overruling of a demurrer to the second count of the indictment, and also the order of the court declining to require the government to elect as to which of the two crimes charged in the second count the government would stand upon. It is said that these rulings were erroneous because this count is duplicitous. This assignment is clearly devoid of merit. The crime of robbery is an essential element of the crime attempted to be charged in the second count of the indictment. It is quite manifest that the government could not charge the defendant with the offense of having put the life of the postal clerk in jeopardy while attempting to commit the crime of robbery, without charging that crime as an element of the second and graver offense. Where one crime is an essential element of another and more serious offense, the indictment is not duplicitous because it charges both of the crimes. It would be fatally defective if it did not do so.

[2] The error most relied on is the action of the court in declining to give the following request:

"You are charged that the law presumes the good character of the accused, and such presumption is to be considered as evidence in favor of the accused in considering the question of his guilt or innocence."

No evidence had been offered as to defendant's character. The action of the court was clearly right. The request was wrong in both its aspects. In a criminal case, when no evidence is offered in regard to defendant's character, there is no presumption that his character is good, and certainly such a presumption, if it were to be indulged, would not be evidence.

In our jurisprudence a person on trial for crime cannot be attacked either as to his general character or as to specific acts of wrongdoing. In this respect the common law differs from the systems in vogue on the continent of Europe. There a defendant's whole past is part of every criminal investigation, and any acts of wrongdoing of which he

has been guilty may be arrayed against him. They are considered a legitimate basis of inference in determining whether he is guilty of the particular act for which he is upon trial. Our law emphasizes the protection of the citizen rather than society. In order to shield the defendant from surprise, and against being overwhelmed by a multitude of charges, and in order to confine the investigation within reasonable limits, it restricts the trial to the specific act of wrongdoing charged in the indictment. This protection of the defendant against a general charge of bad character or bad conduct is, however, a rule of law, and not a presumption of fact. To call it a presumption is only to indulge in loose language. To say that the defendant's character shall not be attacked, unless he himself puts it in issue, is manifestly a very different thing from saying that his character is presumed to be good. In counsel's brief there are numerous excerpts from text-books and encyclopedias, and some decisions, in which this rule of law that the character of a defendant shall not be attacked unless he himself puts it in issue, is stated in the converse form that his character is presumed to be good. For example, in 3 Ency. of Evidence, p. 34, the following language is used:

"The law presumes the good character of a person accused of crime, and no inference of bad character arises from his failure to offer evidence of good character."

By the author these two statements are manifestly regarded as equivalent. It needs no argument, however, to show that they are not so. Counsel cites the following cases which are referred to in the encyclopedias and text-books: People v. Fair, 43 Cal. 137; People v. Gleason, 122 Cal. 370, 55 Pac. 123 (see this case fully explained and cases cited in People v. Griffith, 146 Cal. 339, 80 Pac. 68); Goggans v. Monroe, 31 Ga. 331; Bennett v. State, 86 Ga. 401, 12 S. E. 806, 12 L. R. A. 449, 22 Am. St. Rep. 465; Stephens v. State, 20 Tex. App. 269; Cluck v. State, 40 Ind. 263; Fletcher v. State, 49 Ind. 124, 19 Am. Rep. 673; State v. Kabrich, 39 Iowa, 277; State v. O'Neal, 29 N. C. (7 Iredell) 251; State v. McAllister, 24 Me. 139; State v. Upham, 38 Me. 261; People v. Evans, 72 Mich. 367, 40 N. W. 473; Olive v. State, 11 Neb. 1, 7 N. W. 444; Biester v. State, 65 Neb. 276, 91 N. W. 416; Ackley v. People, 9 Barb. (N. Y.) 609. An examination of these cases will show that the alleged presumption of good character was not involved in any of them. They all turn upon the question whether error was committed by allowing the state to introduce evidence as to defendant's character, when he had introduced no evidence on that subject, or allowing counsel to attack defendant's character under like circumstances, or the giving of instructions which invited the jury to consider against the defendant the fact that he had put in no evidence as to his previous good character. These were the questions that passed into judgment in those cases. Whatever is contained in the opinions touching the presumption of good character is said by way of illustration or emphasis, and is no part of the judgment. Similar language is also used in People v. Weiss, 129 App. Div. 671, 114 N. Y. Supp. 236; State v. Garrand, 5 Or. 216; Commonwealth v. Cleary, 135 Pa. 64, 19 Atl. 1017, 8 L. R. A. 301. But the question ac-

tually involved in these cases was whether the court could in its instruction restrict the use of evidence produced by the defendant as to his good character to simply turning the scale by producing a reasonable doubt, and thus prevent the jury from considering it generally on the question of defendant's guilt or innocence. It is manifest that general language used in such cases as to the presumption of defendant's good character cannot be considered as part of the decision.

Whenever the question has been directly presented for decision it has been held, with a single exception, that unless the defendant puts his character in issue by producing evidence himself, it is wholly outside the case. On the one hand, there is no presumption in regard to his character being either good or bad; and, on the other hand, neither the court nor counsel can properly refer to defendant's character as an element to be considered by the jury. Addison v. People, 193 Ill. 405, 62 N. E. 235; Dryman v. State, 102 Ala. 130, 15 South. 433; Griffin v. State, 165 Ala. 29, 50 South. 962; People v. Johnson, 61 Cal. 142; People v. Griffith, 146 Cal. 339, 80 Pac. 68; People v. Lee, 1 Cal. App. 169, 81 Pac. 969; People v. Bodine, 1 Denio (N. Y.) 281, 315; Danner v. State, 54 Ala. 127, 25 Am. Rep. 662; Gater v. State, 141 Ala. 10, 37 South. 692; McQueen v. State, 82 Ind. 72; State v. Smith, 50 Kan. 69, 31 Pac. 784; State v. Collins, 14 N. C. 117; Knight v. State, 70 Ind. 375, 380.

The so-called presumption of good character is properly classed by Mr. Chamberlayne among the pseudo presumptions. 2 Chamberlayne on Evidence, § 1168. His entire discussion of the quite common error of treating a rule of law as a presumption of fact, is one of the best to be found in the books. Section 1159 et seq. See, also, 2 Wigmore on Evidence, § 290, note 2. In so far as Mullen v. United States, 106 Fed. 892, 46 C. C. A. 22, is at variance with these views, we do not consider it to be a sound exposition of the law.

Our attention is called to the case of Coffin v. United States, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481. In that case the trial court gave a full and accurate charge on the question of reasonable doubt, but refused to give a properly framed request on the presumption of innocence. This refusal was assigned as error. The question raised was whether the refusal to charge as to the presumption of innocence was cured by the giving of a proper charge on the subject of reasonable doubt. This question is examined with much learning in the opinion, and the assignment of error is sustained. In reviewing the subject a passage is quoted from Greenleaf to the effect that the presumption of innocence *is evidence,* and that view is developed to some extent in the opinion. It will be seen, however, from the error assigned, that this point was not directly involved, but is rather a part of the argument than a part of the judgment. When the case of Coffin v. United States went back for a second trial, the proposition that the presumption of innocence is evidence in favor of the defendant was wholly omitted from the charge to the jury. The language of the trial court was as follows:

"The burden of proving Haughey and the defendants guilty as charged rests upon the government, and the burden does not shift from it. Haughey and the defendants are presumed to be innocent until their guilt in manner

and form as charged in some count of the indictment is proved beyond a reasonable doubt. To justify you in returning a verdict of guilty, the evidence should be of such character as to overcome this presumption of innocence and to satisfy each one of you of the guilt of Haughey and the defendants as charged, to the exclusion of every reasonable doubt."

On the second appeal this language is quoted (162 U. S. 681, 16 Sup. Ct. 943, 40 L. Ed. 1109), and in no way criticized by the court. Even more impressive is the action of the Supreme Court in the case of Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624. It was there urged that the trial court erred in giving to the jury the following instruction:

"The defendant is presumed to be innocent of all the charges against him until he is proven guilty by the evidence submitted to you. This presumption remains with the defendant until such time in the progress of the case that you are satisfied of the guilt beyond a reasonable doubt"

—and in refusing the following instruction asked by the defendant:

"Every man is presumed to be innocent until he is proved guilty, and this legal presumption of innocence is to be regarded by the jury in this case as matter of evidence to the benefit of which the party is entitled. This presumption is to be treated by you as evidence giving rise to resulting proof to the full extent of its legal efficacy." 165 U. S. 51, 17 Sup. Ct. 241, 41 L. Ed. 624.

It will be noticed that the request which the court declined to give is taken verbatim from the opinion in the Coffin Case (156 U. S. 459, 460, 15 Sup. Ct. 394, 39 L. Ed. 481), and embraces its most distinctive statements as to the presumption of innocence being evidence. The court held that no error was committed in declining to give this request, and observed that:

"The court might well have declined to give it on the ground of the tendency of its closing sentence to mislead."

Inasmuch as the Supreme Court itself thus holds that it is not error to refuse to charge that the presumption of innocence is evidence, it would seem that this subordinate feature of the opinion in the Coffin Case no longer expresses its views on that subject. See also Thayer's Preliminary Treatise on Evidence, 551; Wigmore on Evidence, § 2511; Chamberlayne on Evidence, §§ 1173, 1175c, 1176c.

Certainly we do not think that the doctrine that the presumption of innocence is evidence should be extended into any new field. To apply it to the pseudo presumption of good character would be peculiarly vicious. The state may rebut the presumption of innocence; all its evidence is leveled directly at that presumption. But against this so-called presumption of good character the state is powerless. It may not meet it by evidence, argument, or instruction from the bench; for, until the defendant has first introduced evidence on the subject of his character, the state may not enter that field. The presumption, if it is allowed at all, must be a conclusive presumption, because it cannot be rebutted by evidence. Thus in our courts the basest character would be placed in a better position than the most upright; for the latter will usually be shown by evidence, and may be met by counter evidence, while the former will be made whiter than snow by the simple alchemy

cf presumption. To allow such a presumption would be as unjust to society as the denial of the correct rule of law would be to the defendant. If the presumption exists, counsel have a right to use it in argument, and to require its declaration from the bench. What will be the effect upon juries? When they are told by the court that the presumption exists, and that they must give effect to it in their decision, they are bound to conclude that this means something, though they have no way of knowing what weight they ought to attach to this peculiar "evidence," which has no basis either in testimony or in inference. It would be a poor advocate, indeed, who could not raise a "reasonable doubt" out of such metaphysics. Sound legal administration—an administration that is just to society as well as the defendant—forbids the allowance of any such presumption. When the defendant is given the benefit of the presumption of innocence, and the rule in regard to reasonable doubt, and is protected against any attack upon his past life, either by evidence, argument, or instruction, he is fully protected against injustice. To go farther is, in the language of Mr. Justice Brewer (in an article in the North American Review), "not to protect the innocent, but to make it impossible to convict the guilty."

The judgment is affirmed.

SMITH, Circuit Judge. My views of the subject considered in the foregoing opinion are quite fully expressed in Chambliss v. United States of America, infra, 132 C. C. A. 112, and I simply concur in the result in the foregoing opinion.