[Crim. No. 3.   Second Appellate District.—June 13, 1905.]

## THE PEOPLE, Respondent, v. PHILLIP LEE, Appellant.

CRIMINAL LAW—IMPANELMENT OF JURY—EXCUSE OF QUALIFIED JUROR BY COURT.—The court did not err in excusing a juror who had been examined from sitting on the panel in a criminal case, over the objection of the defendant thereto.

ID.—CHALLENGE TO PANEL—DENIAL WITHOUT PERMITTING PROOF—CURE OF ERROR.—It was error to deny a challenge of the defendant to the panel of jurors without permitting him to prove the facts

upon which the challenge was made; but such error was cured by a subsequent offer to allow an opportunity to make the proof, of which the defendant declined to avail himself.

Id.—Mode of Impanelment.—Where several jurors have been accepted and sworn, and the panel has been filled with talesmen, it was not error, when one of them has been excused for cause, to call another in his place without first examining the remaining talesmen, and to continue such course, where the right of the defendant to exercise of peremptory challenges was reserved until the panel was completed.

Id.—Murder—Evidence—Declaration of Defendant—Res Gestae—Rebuttal by Prosecution.—Upon a trial for murder, where the declaration of the defendant to the deceased that he was a peace officer, and requiring him to hold up his hands, was proved by the testimony of witnesses, and was part of the *res gestae*, the prosecution had the right to rebut the declaration by proof that the defendant was not a peace officer.

Id.—Presumption of Good Character—Aid of Presumption of Innocence—Refusal of Instruction—Proof.—A requested instruction that the defendant is presumed to be of good character for peace and quiet, and that such presumption is a fact in the case in aid of the presumption of innocence to be considered in determining whether the defendant is guilty, was properly refused. Any fact of good character greater than the presumption of innocence can only appear by evidence, which the prosecution, upon its admission, will be allowed to contradict; and any presumption against bad character is included in the presumption of innocence.

Id.—Justification of Homicide—Requested Instruction Inapplicable to Evidence.—A requested instruction as to a theory of justification of the homicide which was inapplicable to the evidence was properly refused.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

F. H. Thompson, and Byron Waters, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

SMITH, J.—The defendant was convicted in the lower court of murder in the second degree and sentenced to imprisonment in the state prison for thirty years. He appeals from the judgment and from an order denying a new trial.

Several points are urged for reversal, which will be considered in the order stated in appellant's brief. The first of these is, that the court erred in excusing, over the objection of defendant, one of the jurors examined who was in fact not disqualified. But this point has been determined adversely to the defendant by the decision in *People* v. *Arceo,* 32 Cal. 40, and several later cases affirming that decision.

The next point is, that the court erred in denying the defendant's challenge to the panel of jurors without permitting, or at least without waiting for, him to prove the facts upon which his challenge was made. This doubtless was error. But it seems to have been the result of a misunderstanding upon the part of the court as to the defendant's offer to prove the facts; and on the next day, when the court's attention was directed to the error, it offered the defendant opportunity to make the proof; which the defendant declined to avail himself of. The effect of the proof, if made, would have been to set aside the panel, and thus to give to the defendant all the advantage he would have had had he been allowed to make the proof in the first place. He was therefore in no way injured.

Another point is an alleged departure from the method prescribed by the provisions of the code for the impaneling of a jury. Eight jurors had been accepted and sworn to try the case, and, the original twelve having been disposed of, four others were drawn from the box by the clerk. Of these one was challenged for cause and the challenge allowed, and the court ordered the name of another juror to be drawn from the box, over the defendant's objection; who insisted that the remaining three should be first examined before a new name was drawn. And the same ruling occurred with reference to one or more of the other jurymen. But this was not in conflict with the provisions of the codes governing the subject. It is indeed provided by section 1068 of the Penal Code that the challenges of the defendant, both peremptory and for cause, "must be taken when the juror appears, and before he is sworn to try the cause"; and under this provision it was competent for the court to require the defendant to exercise his right of challenge, both peremptory and for cause, as to each juror immediately upon his appearance. (*People* v. *Scoggins,* 37 Cal. 679.) And had this course been

pursued the defendant would have been entitled, upon the rejection of a juror, to have the panel filled before he was called upon to use his peremptory challenges. But all that is required by the provisions of the section cited is, that the panel shall be completed before the defendant be required to exercise any of his peremptory challenges, and it appears that this privilege was allowed him.

Another error complained of is in the admission of the testimony of certain witnesses. It appears from the testimony of several witnesses that the defendant at the commencement of the affair which resulted in the homicide ordered the deceased to throw up his hands, saying that he was a peace officer, and the prosecution was permitted to prove by several witnesses that the defendant was not what he claimed to be. But the declaration of the defendant, being part of the *res gestae,* was evidence in the case, and it was therefore competent for the prosecution to controvert it.

The other point relates to two instructions asked by the defendant, but refused by the court, the first of which was as follows: "The court instructs you: That the defendant is by law presumed to be a man of *good* character for peace and quiet in the absence of any evidence to the contrary. Such presumption of good character, coming as it does in aid of a general presumption of innocence, is no more to be left out by the jury in their deliberation than the original presumption of innocence which the law gives it. The good character of the defendant, which the law presumes, is itself a fact in the case. It is a circumstance tending in a greater or less degree to establish the defendant's innocence, and it is not to be put aside by the jury in order to ascertain if the other facts and circumstances considered by themselves do not establish his guilt beyond a reasonable doubt, but his good character must be considered by you in determining whether or not the defendant is guilty. And after considering such presumptions of good character, together with all the other evidence in the case, if the jury entertain a reasonable doubt as to the guilt of the defendant, you must give him the benefit of such doubt and acquit him."

This instruction we think was rightly refused. It has, indeed, been said that "the law assumes that a defendant who is upon trial for an offense has a fair character," or reputa-

tion, and "he is entitled to the benefit of this presumption
in their consideration of the weight to be given to the testi-
mony bearing upon his guilt." (*People* v. *Gleason*, 122 Cal.
371, [55 Pac. 123].) But the presumption, we think,
amounts to nothing more than that the character or reputa-
tion of the party is not bad, and if any inference may be
drawn from the fact thus presumed, it is contained in and
much more strongly supported by the legal presumption of
the defendant's innocence until evidence to the contrary may
appear. This is something very different from a presump-
tion that the party accused is of "good" character; or to
justify the assumption that the defendant was of such char-
acter as to justify a higher probability of his innocence of
the crime than would result from the general presumption
of his innocence. This fact can only appear by evidence,
which the prosecution will, upon its admission, be allowed to
contradict. (*Danner* v. *State*, 54 Ala. 127, [25 Am. Rep.
662].) The instructions given as to the legal presumption
of innocence were sufficient on the subject of presumptions.
(*People* v. *Johnson*, 61 Cal. 142.)

The other instruction, so far as material, was as follows:
"If you believe from the evidence that the defendant acting
as a reasonable man believed that the deceased, when he came
to the hotel, was armed with a revolver; and that he came to
the hotel with the intention to either kill or commit a violent
assault upon Mrs. Hurlburt, it was not only the defendant's
right, but it was his duty as a law-abiding citizen to intercept
the deceased and prevent him if possible from carrying out
his intentions, and the defendant would be justified in using
all means which appeared to him as a reasonable man to be
necessary to make his resistance and interference effectual."

As explanatory of this point a brief review of the evidence
will be necessary. The homicide took place on the 2d of
February, 1904, at a place called the Berwick Hotel, in the
city of Los Angeles. The deceased had been ejected from
the premises by the defendant at the request of the landlady
during the preceding night; and there is much evidence to
the effect that he sought to borrow a pistol from several
parties for the purpose of going back to the place and killing
the defendant. It also appears that a short time before the
killing he did obtain a pistol, with which he returned to the

house; and which was found upon his person after his death. The evidence relied upon to support the instruction is that of Mrs. Hurlburt, the daughter of the landlady, who testified in effect that at some time before the deceased came to the house upon the occasion of his death (what time does not appear), the deceased came to the house, and upon meeting her threw up his gun and said, ''I will kill you''; and that after his departure she told her mother and the defendant about his drawing a gun on her and threatening to kill her. When the deceased came again she saw him at the top of the stairs, and he said, ''Come here, Alice, come here,'' and motioned to her, and she said, ''No, Jack, I am afraid.'' Upon which, she says, the deceased put his hand back to his right-hand pocket and said, ''Oh, I don't know as I will or not''; and then she looked upstairs and said, ''Lee,''—referring to the defendant. Thereupon Lee came downstairs, and told deceased to throw up his hands; and he would not do it. The defendant then attacked the deceased, but was separated, and again attacking him was again separated, but renewed the attack and the homicide occurred. It is fair to defendant to say that the evidence tended very strongly to show that when the defendant used his pistol the deceased was about to resort to his, or at least that the circumstances were such as to justify the defendant in so believing. But the jury found otherwise, and no point is made as to the sufficiency of the evidence to justify the verdict of murder. We have, therefore, to consider only whether the evidence was sufficient to support the theory embodied in the instruction; and on this point we are of the opinion that there is nothing in the testimony to indicate that Mrs. Hurlburt was in any danger of attack from the deceased, or to produce such an impression upon the mind of the defendant. On the contrary, the case seems to be one of an ordinary fight between two men of violent temper.

We are of the opinion, therefore, that the judgment must be affirmed, and it is so ordered.

Allen, J., and Gray, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 11, 1905. Smith, J., dissenting.