## STATE v. RILEY.

No. 2193.   Decided May 20, 1911.   On application for Rehearing
June 18, 1912 (126 Pac. 294).

1. JURY—MODE OF IMPANELING—CHALLENGES. Under Comp. Laws 1907, sec. 4826, providing that before a juror is called defendant must be informed that if he intends to challenge an individual juror he must do so when the juror appears and before he is sworn, and section 4828, providing that the challenge must be taken when the juror appears and before he is sworn to try the case, though the court may for cause permit it to be taken after the juror is sworn and before the jury is completed,

41 Utah 15

after the challenges for cause to the first twelve jurors are passed on, before others are called to take the places of those excused for cause, right to peremptorily challenge those remaining in the jury box must be exercised or waived by the state and defendant.[1] (Page 229.)

2. CRIMINAL LAW—CHANGE OF VENUE—IMPOSSIBILITY OF FAIR TRIAL—DISCRETION. Under Comp. Laws 1907, sec. 4799, providing that a criminal action may be removed to another county on application of defendant, on the ground that a fair and impartial trial cannot be had in the county where the action is pending, section 4800, requiring the application to be supported by affidavit, and section 4802, providing that if the court is satisfied that the representations of the applicant are true, it must order the removal, the application is addressed to the sound discretion of the court, and, unless it clearly appears that it abused its discretion in denying the change, that it ought to have been satisfied from the showing that a fair and impartial trial could not be had in the county where the case was pending, its action will not be disturbed.[2] Page 230.)

3. CRIMINAL LAW—TRIAL—TAKING EXHIBITS TO JURY ROOM. Though Comp. Laws 1907, sec. 4881, provides merely that the jury, on retiring for deliberation, may take certain papers with them, they may, with permission of the court, take with them exhibits other than papers. (Page 235.)

4. CRIMINAL LAW—APPEAL—HARMLESS ERROR—DELIBERATION OF JURY. That a revolver and overalls, properly admitted in evidence, were, on retirement of the jury, taken to the jury room without permission or knowledge of the court was not prejudicial. (Page 238.)

5. CRIMINAL LAW—TRIAL—MISCONDUCT OF JUROR—REMARK IN JURY ROOM. The remark of one of the jurors, relative to a revolver properly admitted in evidence, but taken to the jury room without the permission of the court, that it "was a murderous loking instrument, and that it showed conclusively the intent" of defendant, did not constitute misconduct. (Page 239.)

ON APPLICATION FOR REHEARING.

6. CRIMINAL LAW—APPEAL—REVIEW—EXCEPTIONS. An exception to the whole of an instruction, when part of it contains a correct statement of the law, is not good.[3] (Page 240.)

---

[1] People v. Callahan, 4 Utah, 49, 6 Pac. 49.

[2] State v. Carrington, 15 Utah, 480, 50 Pac. 526; State v. Haworth, 24 Utah, 398, 68 Pac. 155.

[3] State v. Haworth, 24 Utah, 399, 68 Pac. 155; State v. King, 24 Utah, 482, 68 Pac. 418, 91 Am. St. Rep. 808; State v. Campbell, 25 Utah, 342, 71 Pac. 529.

7. CRIMINAL LAW—APPEAL—ASSIGNMENTS OF ERROR—ABANDONMENT. An assignment of error neither referred to in appellant's brief, nor mentioned in his oral argument, will be treated as waived.[4] (Page 242.)

8. CRIMINAL LAW—APPEAL—REHEARING—EXCEPTIONS. A rehearing in a capital case, on the ground of error in an instruction, will not be denied because of insufficiency of the exception to the part of the instruction complained of. (Page 242.)

9. CRIMINAL LAW—APPEAL—REHEARING—ABANDONED ASSIGNMENTS OF ERROR. Though to the rule that ordinarily a rehearing will not be granted to review a question presented by an assignment of error not urged or considered on. the hearing, especially where it was intentionally abandoned, exception is made when it is apparent that denial thereof will work manifest injustice, rehearing for considering an assignment, shown by the record to have been deliberately and intentionally abandoned, to an instruction, erroneous because of undertaking to direct the jury how they should consider the question of recommending life imprisonment in a murder case, will not be granted on the bare possibility that on a retrial the jury might, notwithstanding the absence of any mitigating fact or circumstance, make such a recommendation, and the court might possibly follow it. (Page 242.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Thomas Riley was convicted of murder and he appeals.

AFFIRMED.

*James D. Pardee* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins,* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

McCARTY, J.

The defendant, Thomas Riley, was informed against in the district court of Salt Lake County for the murder of one George W. Fassell on March 26, 1910. A trial was had, and on June 23, 1910, the defendant was found guilty

---

[4] State v. Campbell, 25 Utah, 342, 71 Pac. 529.

as charged, and was sentenced, July 8, 1910, to be executed. From the judgment rendered, the defendant has appealed to this court.

The following terse and lucid statement of the facts leading up to and surrounding the commission of the homicide is taken from the able and exhaustive brief filed by defendant's counsel in the case.

"The evidence showed that the defendant, Thomas Riley, who had previously given his name as James Hayes, with one Henry Thorne and another man by the name of 'Curley,' on the evening of March 26, 1910, had gone to the store of George W. Fassell on Fourth South Street, between Sixth and Seventh East streets, in Salt Lake City, Utah, and had entered there for the purpose of holding up the occupants of the store and of committing robbery. The three men entered the store, Thorne going in first, and with his revolver commanded of Mr. Jacobson, one of the clerks there, that he throw up his hands. The defendant, Riley, followed, and, taking his position near the center of the store, commanded Fassell to throw up his hands. The other man, 'Curley,' stayed in the doorway, and when trouble began he left the place, and has never been apprehended by the authorities. Thorne forced Jacobson back into one corner of the storeroom; and while Riley was covering Fassell with his revolver, and while Fassell had his arms in air, Thorne came to him and told him to stand back in the corner where Jacobson was. Fassell had his eyes on Riley, and, not paying much attention to Thorne, Thorne jabbed him in the side of the ribs and while urging him to get back his revolver was discharged accidentally or otherwise, and Fassell fell to the floor mortally wounded. As Fassell fell to the floor, Thorne stepped around to the cash register, took what money he could, and while he was doing this Jacobson dodged out of the back door of the store, and Riley, then seeing that Jacobson had gone, rushed out of the front door, soon after followed by Thorne. The two made their way uptown, went to the Angeles rooming house, and were arrested. The men were taken to the police station, questioned somewhat that

evening by the officers, and the next morning Thorne made a written confession to the chief of police, and Riley, after being questioned for some considerable time by the chief of police and police officers, confessed that he participated in the killing as above stated."

The assignment of error first discussed by appellant relates to the manner in which the jury was impaneled. Twelve jurors were first called and sworn on their *voir dire*, and examined as to their qualifications to serve as jurors. Some of these jurors were excused for cause.

The defendant then demanded that before he should be required to exercise peremptory challenges as to the jurors remaining in the jury box other jurors be called to take the place of those who were excused. The court ruled that both the state and defendant must exercise or waive their right to peremptorily challenge the jurors remaining in the jury box, and those not challenged should be sworn to try the case, before any additional jurors should be called to take the place of those who were challenged and excused. Of the twelve jurors first drawn, eleven were either excused for cause, or challenged peremptorily, and one was accepted and sworn to try the cause. This process was repeated until the panel was completed and accepted to try the cause. Counsel for appellant contends that this was error.

Section 4826, Comp. Laws Utah 1907, provides that "before a juror is called, the defendant must be informed by the court, or under its direction, that if he intends to challenge an individual juror, he must do so when the juror appears and before he is sworn." Section 4828 provides that "it must be taken when the juror appears and before he is sworn to try the cause; but the court may for cause permit it to be taken after the juror is sworn and before the jury is completed." These provisions were taken from the California Penal Code (4 Kerr's Cyc. Code, secs. 1066, 1068) ; and the Supreme Court of that state has repeatedly held that the method pursued in the impaneling of the jury in this case is, under the foregoing provisions of the statute, the proper one to follow. (*People v. Scroggins,* 37 Cal. 676;

*People v. Russell,* 46 Cal. 121; *People v. Riley,* 65 Cal. 107, 3 Pac. 413; *People v. Hickman,* 113 Cal. 80, 45 Pac. 175.) We also invite attention to *People v. Lee,* 1 Cal. App. 169, 81 Pac. 969, and to 24 Cyc. 250.

This question was before this court in *People v. Callahan,* 4 Utah, 49, 6 Pac. 49, and Mr. Justice Emerson, speaking for the court, said:

> "The last point made by appellant is that the formation of the trial jury in the case was contrary to law. The court followed the rule laid down, under a statute from which ours was copied, by the Supreme Court of California in *People v. Scroggins,* . . . and which was approved in *People v. Russell.* . . . Upon the authority of these cases, as well as from the reason drawn from the statute, no error was committed in forming the trial jury for this case."

On the authority of these cases, which we think enunciate the correct rule of impaneling a jury under the provisions of the statute herein referred to, and which is fully supported by the authorities above cited, this assignment of error is overruled.

It is alleged in the next assignment of error that the court erred in overruling defendant's motion for a change of venue. The motion was based upon an affidavit made by defendant, in which he alleged that he believed he could not have a fair and impartial trial in Salt Lake County because of the prejudice existing among the people, residents of said county, against him. No counter affidavits were filed. The record shows that the trial was commenced on June 13, 1910. At the time the case was called for trial, the defendant being present in court, his counsel announced that he was ready for trial, and the trial proceeded without any request having been made, by motion or otherwise, for a change of venue. On the first day of the trial, several jurors were examined, and one juror was accepted and sworn to try the case. The facts and circumstances leading up to and which prompted the making and filing of the affidavit and motion for a change of venue are about as follows:

Upon the convening of the court on the second day of the trial (June 14, 1910), the court called attention of counsel for the defense to a certain article appearing in the Herald-Republican of that date, a daily newspaper published in Salt Lake City, in which was a brief summary of the facts and circumstances leading up to and surrounding the commission of the crime, including the written confession of Thorne, in which the defendant was implicated as one of the parties engaged in the perpetration of the robbery at the time Fassell was killed. On being shown the article, counsel immediately moved the court for a change of venue, and in support of the motion presented the defendant's affidavit, in which it is alleged that at the time the crime in question was committed, and for several days thereafter, "the public journals of Salt Lake City published full and detailed accounts of the tragedy alleged and of the parties concerned therein, alleged to have been the parties who perpetrated the alleged crime, . . . and made such strong statements of the evidence and all matters . . . connected therewith that public opinion formed very strongly against this defendant, and considerable excitement was created in the public mind at that time on account of the transaction as alleged in the newspapers, which excitement and public opinion ranged so high that the county officials having this defendant in custody were compelled to remove him from the county jail to the Utah State Prison to prevent him being a victim of mob violence. . . . (Reference is here made to the newspaper article mentioned, a copy of which is attached to the affidavit and made a part thereof.) That he has reason to believe, and does believe, that the said Herald-Republican has a large circulation and is extensively read throughout Salt Lake County, and that the article herein referred to and made a part hereof has and will mold public opinion as to render a fair and impartial trial impossible in Salt Lake County. Affiant further believes that by reason of the sentiment heretofore created and revived and extended by the article hereto attached justice cannot be had in Salt Lake County. . . ."

The article referred to, so far as material to the determination of the question under consideration, is as follows:

"James Hayes, charged with murder in the first degree for the killing of George W. Fassell the night of March 26th, was brought before Judge T. D. Lewis in the district court for trial yesterday morning. . . . Counsel for the prisoner announced at the opening of the court that Riley wished to give his true name of Thomas Riley, and on order of the court the alias of James Hayes was changed. . . . Riley was not handcuffed, although Deputy Sheriffs Andrew Smith, Jr., and Richard Eddington took turns sitting beside him. . . . Riley is charged as being one of the three men who held up the grocery store at the time George W. Fassell was killed, but the state does not expect to show that he was the man who fired the fatal shot. Henry Thorne, who was arrested with Riley, has confessed that he fired the shot which killed Fassell and this confession implicated Riley as the man who was with him at the time. Another man known as 'Curley,' who made up the trio of robbers escaped and to date has not been captured. The confession of Thorne, which was made the day after the murder, will be paramount in the trial, this confession reading as follows: 'Salt Lake City, Utah, March 27, 1910. Confession of Harry Thorne of the murder of G. W. Fassell on the night of March 26, 1910. Hayes and myself and a man named Curley, whom I had not met before, left the room about 7:30 p. m., intending to hold up the first place that looked good. We went into the store, which you say is Fassell's. Hayes stood about half way along the counter, facing the butcher. We told them to hold up their hands. The butcher held his up high, but Fassell did not hold his up high enough, or fast enough, and as I was trying to get them together near the north end of the counter, the butcher ran through the back, and I put the gun against Fassell's side to hurry him up, and it went off. After shooting Fassell I took some money out of the cash register. Curley had taken some money before I got to it. The pencil sketch of the store signed by me is about correct. [Signed] Harry Thorne.' Witnesses: S. M. Bar-

low, J. J. Roberts, H. F. Wilson, R. F. Golding, George Chase. The murder of Fassell was the chief topic of conversation for many days, because of the general popularity of the young groceryman, who, at the time of his death, was secretary of the Retail Merchants' Association and also prominent in the Phillips Congregational Church. He was engaged to marry Miss Bessie Worthen of 566 East Tenth South Street, and also had a wide circle of friends and acquaintances. Riley and Thorne were arrested at the Angeles rooming house within a half hour after the murder by Detectives George Sheets, Chase and Schultz, and S. M. Barlow, chief of police. The detectives had been warned that the gang of criminals had come from Ogden to Salt Lake and were quartered at the rooming house, and earlier in the evening they had called there for the purpose of taking them in on general principles and getting them moved out of town on floaters. Not finding their men, the detectives returned to the police station with the intention of arresting the gang later that night, and they had only reached the station when a telephone call came, informing them of the holdup and murder. Then they retraced their steps and got their men."

Counsel for defendant strenuously insists that the showing thus made entitled defendant to a change of venue. Section 4799, Comp. Laws Utah 1907, provides that "a criminal action may be removed from the court in which it is pending on application of the defendant, upon the ground that a fair and impartial trial cannot be had in the county where the action is pending." Section 4800 provides that the application must be supported by an affidavit or affidavits. Section 4802 provides that, "if the court is satisfied that the representations of the applicant are true, an order must be made for the removal of the action to the district court of a county free from such objection." In the case of State v. Carrington, 15 Utah, 480, 50 Pac. 526, this court, in harmony with the great weight of authority, held that the exercise of the power granted by the foregoing provisions of the statute is within the sound discretion of the trial court, and that a denial of the application for a change of venue will not be

reviewed, unless it is made to appear that such discretion
has been abused. The doctrine announced in that case was
reaffirmed in *State v. Haworth*, 24 Utah, 398, 68 Pac. 155.
These provisions of our statute were taken from the Penal
Code of California, and the Supreme Court of that state has
frequently held that an application for a change of venue is
addressed to the sound discretion of the court; and, unless
it clearly appears that the court has abused its discretion, its
ruling granting or denying a change of venue will not be dis-
turbed. (*People v. Fisher*, 6 Cal. 155; *People v. Mahoney*,
18 Cal. 181; *People v. Graham*, 21 Cal. 261; *People v.
Congleton*, 44 Cal. 92; *People v. Goldensen*, 76 Cal. 328, 19
Pac. 161; *People v. Vincent*, 95 Cal. 425, 30 Pac. 581.)

We also invite attention to the following authorities, which
illustrate and support this doctrine: *State v. Pomeroy*, 30
Ore. 16, 46 Pac. 797; *State v. Armstrong*, 43 Ore. 207, 73
Pac. 1022; *Pearce v. Territory*, 11 Okl. 438, 68 Pac. 504;
*State v. Parmenter*, 70 Kan. 513, 79 Pac. 123; *State v.
Champoux*, 33 Wash. 339, 74 Pac. 557; 12 Cyc. 243.

Section 4802 of the Code provides that, "if the court is
satisfied that the representations of the applicant are true,"
the application for a change of venue must be granted. The
important question therefore is: Ought the court to have
been satisfied from the showing made that the defendant
could not obtain a fair and impartial trial in Salt Lake
County? The court, in commenting and passing on the mo-
tion, said: "I do not think there is any ground for a change
of venue. The examination of the jurors did not disclose
such feeling as would warrant a change of venue. . . .
Some of them were disqualified by reason of having read the
paper; but none of them indicated any hostility to the de-
fendant. . . . There is no indication of public feeling
in the examination of the jurors, and the article in this morn-
ing's paper would not tend to arouse public feeling in the
sense that it would be unsafe for the defendant to go to trial."
The views of the court thus expressed respecting the effect,
if any, that the newspaper article had on the proceedings and
the general state of public opinion in Salt Lake County to-

ward the defendant are fully supported by the record. Of all the jurors examined, only seven, so far as shown by the record, read the article in question, and one of the seven was accepted and sworn to try the case. Another of the jurors, who had read the article, was passed for cause both by the prosecution and defense, and was challenged peremptorily by the state. In fact, after the second day of the trial, neither the prosecution nor the defense seemed to regard the article mentioned as an element or factor in the case. Some of the jurors were not even interrogated in reference to the article. And we think the examination of the jurors generally shows conclusively that the public sentiment in Salt Lake County towards the defendant was not such as would tend to prevent him from having a fair and impartial trial. The court, at the time of the motion for a change of venue, stated that if, upon further examination of the jurors, it should appear that the defendant was prejudiced by the publication of the newspaper article mentioned, leave would be granted the defendant to renew his motion for a change of venue. This the defendant did not do. He went to trial without further objection, and submitted the case to the jury without having exhausted his peremptory challenges. In fact, we think it clearly appears from the record that no greater difficulty was experienced in obtaining a jury than is usually met with in this class of cases. We are therefore of the opinion that the court did not err in denying the motion for a change of venue.

The only remaining question presented by the appeal is that raised by the motion for a new trial. This motion was based on the alleged misconduct of the jury in receiving "evidence out of court other than that resulting from a view of the premises or any communication, document, or paper referring to the case." It appears that a revolver and pair of overalls, which were taken from the possession of defendant and his associates at the time they were arrested, were introduced in evidence. After the cause was submitted and the jury had retired to consider their verdict, the bailiff, who had been sworn to take charge of the jury during their deliberations, carried to the jury room, and left

with the jury the revolver and overalls mentioned. It was shown by the affidavit of one of the jurymen that, while he and his fellow jurors were deliberating on the case, one of them picked up the revolver and said "that it was a murderous looking instrument, and that it showed conclusively the intent of Riley." Section 4881, Comp. Laws Utah 1907, provides that, "upon retiring for deliberation, the jury may take with them all papers, except depositions, which shall have been received as evidence in the case, or copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. They may also take with them the written instructions given and notes of the testimony or other proceedings of the trial, taken by themselves or any of them, but none taken by any other person." It is contended on behalf of defendant that, as the foregoing provisions of the statute do not expressly include exhibits other than papers and writings, there is no authority of law for exhibits of the character under consideration to be taken to the jury room and used by the jury after the cause has been submitted to them. The general rule is that, in the absence of any statute on the subject, the matter of allowing the jury to take with them exhibits which have been admitted in evidence when they retire to their room for deliberation is largely left to the discretion of the court. In 1 Bishop's New Crim. Proc., sec. 982, the author says:

"By permission (of court) they may take the indictment or other records which present the issues to be tried, the instructions of the court when in writing, the *duly identified instruments or relics of the crime used as exhibits at the trial.*"

(12 Ency. Pl. & Pr. 593; 2 Thompson on Trials, secs. 2574-2597; *Longworth v. Connelly,* 14 Neb. 340, 15 N. W. 737, 45 Am. Rep. 117; *Russell v. State,* 66 Neb. 497, 92 N. W. 751.)

And it has been held in jurisdictions having statutes similar to our own on this subject that the matter of permitting the jury to take with them on retiring to consider their ver-

dict exhibits which have been admitted in evidence, other than those mentioned in the statute, is within the discretion of the court. The provisions of our statute relating to the subject were copied from the Penal Code of California; and the Supreme Court of that state, in construing the provisions of the Code from which our statute was taken, held, in *People v. Cochran*, 61 Cal. 548, that the sending of exhibits to the jury room or withholding them is within the discretion of the court. In the course of the opinion, the court said:

"The statute is not mandatory. It directs the court to allow the jury to take with them any papers received as evidence which may be of service to them in making up their verdict; but none can be taken without permission of the court. The matter is therefore left to the sound discretion of the court, and its action is not revisable, unless there has been an abuse of discretion."

The State of Washington has a similar statute. (2 Ballinger's Ann. Codes & St., sec. 5004.) In *State v. Webster*, 21 Wash. 63, 57 Pac. 361, the jury, under the direction of the court, took with them on retiring to their room for deliberation a bottle of whisky and a bottle containing a drug which had been admitted in evidence. This was assigned as error. The court, in disposing of the question, said:

"But the objection of counsel is met by the very well considered case of *Doctor Jack v. Territory*, 2 Wash. T. 101, 3 Pac. 832, in which the above section, which has been the existing law of the state and territory for many years, is construed. There it was held that exhibits properly introduced in evidence and explanatory of the evidence of the witnesses might be taken to the jury room (in that case, which was a conviction for murder in the first degree, a hat and coat, which were exhibits in the case, were taken to the jury room); and such has been the practice and accepted construction of this section since then"—

Citing with approval *People v. Cochran, supra*.

The statutes of Minnesota contain a provision almost identical with section 4881 of our own Code (volume 2, Stat. Minn. 1894, sec. 5375), and in the case of *State v. Olsen*, 103 N. W. 727, it was held that the trial court did not err in permitting the jury to take with them when they retired

for deliberation a bottle of "tonto," which had been admitted in evidence. The court said:

"The bottle of 'tonto,' which the chief of police purchased, was properly received in evidence and made an exhibit in the case. The defendant objected to the bottle being taken by the jury on retiring. The learned trial court treated it as an exhibit, and applied to it the same rule as to papers, under section 5375, General Statutes 1894, in any case, but told the jury that its contents were not to be tasted, but simply carried to the jury room for inspection. As an exhibit, it was properly received in evidence, and within the discretion of the court submitted to the jury; and there appears to be nothing on which to furnish a foundation for the claim that injury had been done or the discretion of the court abused by this procedure."

This same court reaffirmed the doctrine here announced in the case of *State v. Lindquist,* 110 Minn. 12, 124 N. W. 215.

The Montana Statutes contain a similar provision (volume 2, Code of Mont. 1895, sec. 2122), and in *Territory v. Doyle,* 7 Mont. 245, 14 Pac, 671, it was held not to be error for the jury to take with them on retiring to their room for deliberation an account book belonging to the accused. (*State v. Allen,* 23 Mont. 121, 57 Pac. 725; *People v. Mahoney,* 77 Cal. 529, 20 Pac. 73; *People v. Hower,* 151 Cal. 638, 91 Pac. 507; *Gresser v. State* (Tex. Cr. App.), 40 S. W. 595; Spelling, New Tr. & App. Pr., sec. 162; 12 Cyc. 677.)

The following cases also discuss and illustrate this question: *State v. Wallace,* 78 Conn. 677, 63 Atl. 448; *Adams v. State,* 93 Ga. 166, 18 S. E. 553; *Taylor v. Commonwealth,* 90 Va. 109, 17 S. E. 812; *State v. McCafferty,* 63 Me. 223; *Powell v. State,* 61 Miss. 319; *Phillips v. State,* 156 Ala. 140, 47 South. 245; *People v. Gallagher,* 75 App. Div. 39, 78 N. Y. Supp. 5; *People v. Hughson,* 154 N. Y. 153, 47 N. E. 1092; *Martin v. Commonwealth* (Ky.), 100 S. W. 872; *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449.

In this case, however, it seems that the exhibits were taken to the jury room by the bailiff, without the consent or knowledge of the court. While this was an irregularity, yet we fail to see in what way the defendant could have been prejudiced thereby. The revolver and over-

alls were properly admitted in evidence, and were seen by the jury during the trial. It was not shown, nor can we, under the circumstances, presume, that the jury made any improper use of the articles in the jury room. Nor is it contended that the jury made, or could have made, discovery of any fact or facts by the inspection of the articles in the jury room other than those disclosed by them at the time they were admitted in evidence.

The remarks made by one of the jurors, hereinbefore referred to, respecting his impressions of the revolver, and as to what it showed, in no sense constituted misconduct. To illustrate: Suppose the articles mentioned had not been taken to the jury room, and it were shown that one or more of the jurors, during the deliberations of the jury, had stated that the revolver in question "was a murderous looking instrument, and that it showed conclusively the intent" of the defendant, we take it that no lawyer would seriously contend that such statements would constitute misconduct on the part of the jurors making them.

Judgment affirmed.

FRICK, C. J., concurs.

STRAUP, J. (concurring).

The exhibits were taken to the jury room by the bailiff, without the consent or direction of the court. They were therefore improperly taken to the jury room. That is conceded. Whether the court, under the statute, had the power to direct or permit them to be taken need not be decided; for the court gave no such direction or permission. The exhibits having been improperly taken to the jury room, the only question here to be decided in that connection is that of prejudice. Let it be said, as does counsel for the defendant, that from the committed error or wrongful conduct of the bailiff prejudice will be presumed, yet the character of the evidence and the undisputed facts established by it are such that upon the record it is manifest that the de-

fendant could not have been and was not prejudiced by the wrongful taking of the exhibits to the jury room. I can see no possible use which the jury might or could have made of them, or in connection with what question, fact, or circumstance they could have considered them, to the defendant's prejudice. I therefore concur in the affirmance of the judgment.

ON. APPLICATION FOR REHEARING.

McCARTY, J.

Appellant has filed a petition for rehearing. The principal ground upon which he seeks to have the cause further reviewed and considered by this court is that the trial court committed error prejudicial to his rights in its charge to the jury on the question of recommendation.

Comp. Laws 1907, sec. 4162, so far as material here, provides:

"Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court."

The court, in its eighth instruction, charged the jury:

"Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of or attempt to perpetrate any arson, rape, burglary, or robbery, or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him that is killed, or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind, regardless of human life, is murder in the first degree. And under the law of this state every person guilty of murder in the first degree shall suffer death, or upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court. And, if you should find the defendant guilty of murder in the first

degree, you should then consider the question of making such recommendation, and it will be your duty to consider such question in the same manner as any other question submitted to you, giving to it your careful and conscientious consideration; and, should you decide to make such recommendation, you will include it in your verdict. The object of the law in punishing a person guilty of crime is not vengeance; the purpose is to deter the person who has broken the law from a repetition of his act, and also to deter other persons from committing similar breaches of the law; and if in this case your verdict is guilty, then in determining whether or not you shall include such recommendation in your verdict you should take into consideration all of the circumstances disclosed by the evidence, and all the evidence in the case, including the evidence on behalf of the defendant, and also the object and purpose of the law imposing punishment, and it should be the result of your deliberate consideration."

Appellant excepted to this instruction, as follows: "Defendant excepts to the whole of No. 8 of the court's charge." This is not a good exception. In fact, it leaves appellant in the same position as he would be in if he had not made any attempt to except to the instruction. The rule is well established in this state that a general exception to an entire instruction, which contains two or more independent propositions, one or more of which contains a correct statement of the law, cannot be considered. (*State v. Haworth,* 24 Utah, 399, 68 Pac. 155; *State v. King,* 24 Utah, 482, 68 Pac. 418, 91 Am. St. Rep. 808; *State v. Campbell,* 25 Utah, 342, 71 Pac. 529.) The first part of the instruction under consideration contains a correct statement of the law; therefore the instruction is not vulnerable to a general exception, such as the one in question.

Appellant assigned the giving of the instruction as error. His counsel, however, neither referred to this assignment of error in his brief, nor mentioned it in his oral argument before this court. We therefore, in harmony with the well-established rule in this, as well as in many other, jurisdic-

41 Utah 16

tions, treated the assignment as waived by appellant,
and did not refer to it in the opinion affirming the        7
judgment.   (3 Cyc. 388; 3 Ency. L. & P. 605.)   In
the case of *State v. Campbell, supra,* this court, in an opin-
ion written by Mr. Justice Bartch, said:

> "That certain portions of the charge are manifestly erroneous
> must be conceded, and why counsel persist in taking merely whole-
> sale exceptions in such cases, when we have repeatedly held that we
> cannot and will not consider them, it is difficult to understand.
> The reasons why the specific objectionable matter should be
> pointed out to the court before the retiring of the jury are so
> patent, and have been so often mentioned that we do not deem
> it necessary again to refer to them.  In accordance with the settled
> rule in this jurisdiction, we must refuse to consider any of the
> assignments of error relating to the charge; and, as counsel failed
> to discuss any of their assignments relating to the refusal of the
> court to charge as requested by the defendant, we must regard
> them as abandoned, although some of the requests stated the law
> correctly, and were applicable to the facts in the case."

After the case was argued and submitted, the decision of
this court in the case of *State v. Thorne,* 39 Utah, 208, 117
Pac. 58, was announced.  In that case the appellant was tried
for the same crime for which appellant here stands convicted.
The jury there, as here, returned a verdict of first-degree
murder, without recommendation.  In the Thorne Case an
instruction identically the same as the one under considera-
tion was given.  No exception was taken to the instruction;
but it was assigned as error and discussed by Thorne's
counsel in his printed brief and in his oral argument        8, 9
before this court.  No exception having been taken,
Thorne was not, as a matter of right, entitled to have the
instruction considered on appeal.  It being a capital case,
this court felt constrained to give him the same benefit of
the assignment of error  (the Attorney-General consenting
thereto) in which he challenged the instruction as he would
be entitled to if he had taken a proper exception, and held
that the giving of the instruction was prejudicial error.  Ap-
pellant now cites and relies on the decision in that case as
authority in support of his petition for a rehearing.

This being a capital case, we are not disposed to deny a rehearing on the ground of appellant's failure to take a proper exception to the instruction mentioned. We shall therefore proceed to consider the application the same as we would do if a proper exception had been taken.

The Attorney-General does not concede that the trial court committed error in giving the instruction, but, in view that the same instruction was, in the Thorne Case, held erroneous, he does not resist the granting of appellant's application for a rehearing in this. When our attention was first called to the petition, we inclined to the opinion that, under the rule announced in the Thorne Case, appellant is entitled to a rehearing, and that ultimately a new trial should be granted. Upon reflection we are satisfied that the granting or denying of appellant's petition would not affect or in any way unsettle any rule or principle of law laid down by this court in the Thorne Case. In that case as we have stated, while the defendant did not except to the charge of the court on the question of recommendation, he nevertheless assigned it as error, and his counsel discussed the question in his printed brief and in his oral argument to the court; whereas in this case the instruction was assigned as error, but it was not argued by counsel for appellant in his printed brief, nor referred to by him in his oral argument. Appellant assigned twelve errors, but three only were argued by his counsel. The first error discussed related to the manner in which the jury was impaneled, the second to the overruling of appellant's motion for a change of venue, and the third to the overruling of his motion for a new trial. In the closing paragraph of his brief, counsel for appellant says:

"For the reasons set forth in this brief (the three grounds above mentioned), it seems, therefore, that the court erred in impaneling the jury, in overruling defendant's motion for a change of venue, and in overruling defendant's motion for a new trial, based on the ground of the jury having received evidence out of court, and *on these grounds the defendant prays for a new trial and a change of venue.*" (Italics ours.)

It is not claimed that the omission to argue the assignment of error in which the instruction referred to is assailed was due to any oversight or inadvertence on the part of appellant's counsel, but, on the contrary, the closing part of his brief, which we have quoted, and the petition for a rehearing show that counsel did not deem the assignment of sufficient importance to justify discussion. In the petition for a rehearing, it is said:

"Defendant further requests that he be granted a rehearing in this matter, so that he may present to the court the question as to the proper instruction of the jury upon the question of recommendation of mercy. The defendant excepted to the instruction of the court on this question and assigned it as one of the errors, but *deeming that enough points had been argued to the court for a reversal of the decision, did not argue*" this assignment of error. It thus clearly appears that the assignment of error was intentionally abandoned. An application for a rehearing is addressed to the discretion of the court; and, as a general rule, a rehearing will not be granted for the purpose of reviewing a question presented by an assignment of error which was not urged or considered on the hearing (18 Enc. Pl. & Pr., pp. 39, 40), and especially where, as here, the assignment was intentionally abandoned. There is, however, an exception to this general rule. When it is apparent that a denial of the application would work manifest injustice, the court, in such cases, will ordinarily grant a rehearing. But there is nothing in appellant's petition or, for that matter, in the record that even suggests that it comes within the exception. Appellant was represented by able counsel, and his defense was ably and vigorously conducted, both before the trial court and on appeal. No claim is made that the judgment or penalty pronounced in this case is, under the law and the admitted facts, excessive or in any respect disproportionate to the crime for which appellant stands convicted. It is admitted that the undisputed evidence shows that appellant, Thorne, and Curley went to the store of George Fassell "for the purpose of holding up the occupants and committing robbery;

. . . that while Riley (appellant) was covering Fassell
with his revolver, and while Fassell had his arms in the air,
Thorne came to him, told him to stand back in the corner;
. . . that Fassell had his eyes on Riley, and, not paying
much attention to Thorne, Thorne jabbed him in the side of
the ribs, and while urging him to get back his revolver was
discharged accidentally or otherwise, and Fassell fell to
the floor mortally wounded." It is further admitted that
appellant confessed 'to the officers that "he participated in
the killing as above stated." The admitted facts, therefore,
show that appellant is guilty of first-degree murder. While
Fassell had his "hands up" and was complying with the de-
mands made of him by appellant and his cohighwaymen, and
was entirely helpless respecting any resistance on his part,
he was ruthlessly murdered by these robbers. The record
does not disclose a single fact or circumstance attending the
commission of this crime that in any way tends to palliate
its atrociousness; but, on the contrary, the admitted facts
show that the crime was a most aggravated one.

As we have pointed out, the court charged the jury on the
question of recommendation in part as follows:

"It will be your duty to consider such question in the
same manner as any other question submitted to you. . . .
You should take into consideration all the circumstances
disclosed by the evidence in the case, including the evidence
on behalf of the defendant, and also the object and purpose
of the law in imposing punishment, and it should be the re-
sult of your deliberate consideration"—the natural thing for
a jury composed of unbiased, conscientious, intelligent men
to do. In the Thorne Case we held the giving of the instruc-
tion was error, because it restricted the discretionary power
conferred on the jury by statute to make such recommenda-
tion, regardless of the atrociousness of the crime committed
and the absence of any mitigating fact or circumstance in
the case. The Chief Justice, however, in his separate opin-
ing concurring in the reversal of the judgment, in that case
said: .

"I desire to state, however, that if the only error complained of was the one relating to the giving of the charge concerning the recommendation I should not, in view of all the facts and circumstances of the case, concur in a reversal of the judgment upon that cause alone."

The question now presented is: Ought this court to grant a rehearing for the purpose of considering an assignment of error which the record shows was deliberately and intentionally abandoned, and to ultimately grant a new trial on the ground that there is a bare possibility that on a retrial the jury might, notwithstanding the absence of any mitigating fact or circumstance in the case, make a recommendation that the defendant be confined in the state prison for life, and that the court might possibly follow such recommendation in pronouncing judgment?

We are clearly of the opinion that the reasons advanced by appellant in his petition are wholly insufficient to warrant this court in granting a rehearing. The application is therefore overruled and denied.

FRICK, C. J.

I concur. While I fully concurred in the conclusion reached in the Thorne Case, that the jury should be left entirely free and without any restrictions from the court in arriving at a conclusion whether to make a recommendation pursuant to section 4162, referred to by Mr. Justice Mc-Carty, yet, in view of all the facts and circumstances of this case, I am firmly convinced that by what the court said in the instruction objected to it did not and could not have prejudiced the rights of the appellant. The jury, of course, had a right to decline to make any recommendation in this case; and, unless there is something in the instruction which might have induced them to decline to make a recommendation, appellant is not injured, although the court in the instruction made some observations it should not have made. I can see nothing in the instruction which, in view of all the facts and circumstances of this case, would lead reasonable men to conclude that the jury in any way was, or could have been,

influenced in declining to make a recommendation. In view of these facts, it would be useless to grant a rehearing in this case.

STRAUP, J., concurs in the result, denying a rehearing.