268 P.2d 427

ANDERSON et al. v. JOHNSON et al.

No. 8001.

Supreme Court of Utah.

March 17, 1954.

Young, Thatcher & Glasmann, Ogden, for appellants.

George D. Preston, Logan, Walter G. Mann, Brigham City, for respondents.

LARSON, District Judge.

An appeal from the District Court of Cache County holding and adjudging certain deeds to real estate in Box Elder County to be valid and in full force and effect. Affirmed.

Lorenzo W. Anderson, a widower since 1937, and a resident of Brigham City, Box Elder County, died June 22, 1949, leaving surviving him, three children, the plaintiffs, George N. Anderson and Lorenzo W.

Anderson, Jr., called "Renny" throughout the proceedings, and the defendant, Marie T. Johnson. For some years prior to 1943, deceased had been the owner of real property in Box Elder County, consisting of two homes and some vacant lots in Brigham City, a dry farm at Promontory, and a farm at Garland. In 1943, deceased in his own handwriting, made and executed several warranty deeds. By their terms, one conveyed to George one of the city homes called the Christensen place and a 1/3 interest in the Promontory dry farm; another conveyed to Marie the family home at Brigham City and a 1/3 interest in the Promontory dry farm; the third gave Renny a vacant lot behind the family home, the Garland property and a 1/3 interest in the Promontory farm. These deeds are referred to as the "43" deeds and involved in this appeal. In addition to the foregoing deeds, and at the same time deceased executed deeds conveying to each of his grandchildren, a vacant lot in Brigham City. The deeds to the grandchildren were never delivered to anyone. The grantee caused them to be recorded and returned to him. They remained in his possession until his death. No questions as to the validity of the deeds to the grandchildren are involved, but the way the property was handled after the making of the deeds becomes involved in the argument as to the validity of the 3 deeds to the children called the "43" deeds. The deceased remained in possession of the vacant lots deeded the grandchildren, irrigated them, produced what he could on them and

from the income, paid to the L D S Church, 1/10th as tithing, paid the taxes, and the costs of operation. Any balance was remitted to the respective grandchildren. The record is silent as to whether the tithing was paid in the name of deceased or in the names of the grandchildren.

At the time the "43" deeds were made George was living in Brigham City, Renny was with the FBI in South Dakota, and Marie in Salt Lake City. Deceased was about 64 years of age, a surveyor, and in excellent health. After drawing up the deeds, the grantor took them to a nephew, an attorney, signed and acknowledged them and took them home with him. He continued to handle and manage the property described in the three deeds to his sons and daughter as he had handled them previously, leasing them, collecting rents, paying taxes, etc., the same as he did the property deeded to the grandchildren.

In 1945, Marie and her family moved to Brigham, lived with her father and took a lease on the dry farm at Promontory. In November, 1946, at a discussion between George and his father, and for the benefit and convenience of both, it was decided that George should come to Brigham and live in the Christensen place. But George's family would not live in the Christensen place without extensive renovations which he could not make unless he held record title. To effectuate this, deceased made new deeds to George—one covering the Christensen place which was recorded and the other a

⅓ interest in the Promontory dry farm, which was placed in the desk with the other deeds.

After George moved to Brigham some feelings developed between him and Marie, she evidently thinking George was trying to get some advantage. Shortly after, George sold the Christensen place and moved to Idaho.

In 1946 decedent suffered a rather severe heart attack; later that year he had a transurethral prostectomy. About August, 1946, he suffered a stroke and until the latter part of 1948 was very ill and ofttimes irrational.

On July 24, 1947, he made a Will which was much different in terms from the "43" deeds; and also much different from some deeds bearing date in February, 1949, and upon which defendants rely for their claim to the property involved in the action. These deeds are referred to as the "49" deeds.

The Will gave to Marie, the family home and the vacant lot behind it, which lot had been included in the "43" deed to Renny. It also gave Marie the right to purchase the Promontory dry farm in its entirety for $10,000; and provided how and to whom that money was to be paid—$1,000 to be given to each of the grandchildren on conditions stated. Renny was to have only the Garland farm. George was excluded entirely from the Will.

The "43" deeds and the "Will" had been kept in a cubby hole in the desk in the family home along with a number of other deeds. The "49" deeds were placed with the others. In March, 1949, Marie burned a stack of old deeds, including the "43" deeds and the "Will." The day before the death of the grantor, she recorded her "49" deed but refused to deliver to Renny the "49" deed made to him and covering only the Garland property, unless and until he executed to her a quit claim to all the rest of the property which she claimed.

The action was filed and tried in Box Elder County. On appeal, the judgment was reversed because of a misconstruction by the trial court of the "Dead Man Statute" and excluded the evidence of the two boys. See Anderson v. Johnson, Utah, 239 P.2d 1073. When the case came on the calendar for retrial, plaintiffs sought and obtained a change of place of trial to Cache County. When called for trial in Cache County, both parties appeared, announced themselves as ready, and went to trial without objection. However, the transfer to Cache County is now assailed as error.

We have sought to exclude from the above any statement of fact about which there is any difference in the evidence or the argument, and have merely painted the background scenery out of which arise the questions presented on this appeal. We state them thus:

1. Did the court err in granting a change of place of trial from Box Elder County to Cache County?

2. Were the "1943" deeds ever delivered during the lifetime of the grantor or were they merely testamentary in character?

3. Were the "1949" deeds ever delivered by grantor during his lifetime?

4. At the time of the execution of the "1949" deeds was the grantor competent to execute and deliver the same?

We consider them seriatem.

■ 1. Appellants contend that the evidence on the motion for change of place of trial is insufficient to justify the transfer, and the order of transfer invalid. The sufficiency of evidence to justify a change of place of trial is a matter that lies in the discretion of the trial court and will not be disturbed or set aside unless the record discloses a clear and positive abuse of discretion. State v. Certain Intoxicating Liquors, 53 Utah 171, 177 P. 235. All laws that have to do with the removal of action from one local jurisdiction to another for trial have one definite purpose, that is to promote justice by avoiding local matters of a prejudicial nature that might be detrimental to the rights of one of the parties. The authority of a court to order a change of place of trial existed at common law as part of its inherent power to assure a fair and impartial trial in dispensing justice. Crocker v. Justices, 208 Mass. 162, 94 N.E. 369, 21 Ann Cas. 1061. In extension of these principles, most states including ours, have provided statutes which should be liberally construed to attain their objects. A trial court's ruling on such a matter will not be considered to have been an abuse of discretion unless the court acted unfairly, or by whim or caprice or practically denied justice in the case. There would seem to be no room for contest where the statute makes the allowance of a change discretionary with the court.

Our statute is so worded that it necessarily is left to the option of the trial court, in all cases involving prejudice of the people locally, to decide whether conditions are such that the requirement of justice would be best subserved by a change. State v. Riley, 41 Utah 225, 126 P. 294.

■ The necessities for the promotion of justice require that a wide latitude should be allowed the trial court in passing upon an application for a change of place of trial on the grounds of bias, or prejudice in the community.

■ The granting or denial of an application for a change on the grounds of local prejudice is in no sense jurisdictional, but at most could only be error. Since the burden is upon the party who assails the ruling of the court to establish it as error, and as prejudicial, and the matter is one strictly within the court's discretion, and nothing constituting even a claimed abuse of discretion, having been shown or claimed; and since defendants without objection participated in the trial, Baker Lumber v. A. A. Clark Co., 53 Utah 336, 178 P. 764, and make no claim even now that they did not

have a fair and impartial trial in Cache County, we hold the assignments on this point to be without merit.

The remaining assignments are directed to the trial on the merits. The cause was submitted to the jury for special findings. Appellants note three objections to the Findings of the jury; direct two at the Conclusions of Law; two at insufficiency of the evidence.

■ Appellant contends that the court should have withdrawn from the jury the issue as to delivery of the "43" deeds; and the issue as to the mental capacity of the grantor, Lorenzo W. Anderson, because the evidence could not support a finding for plaintiffs. We shall not prolong this opinion by detailing the evidence in the record. To do so just sets a pattern which many counsel in subsequent case try to fit their cases and evidence into, regardless of differences in factual basis. Suffice it to say, we find sufficient evidence to take the issues to the jury. If the evidence favorable to delivery was believed by the jury, as against that of defendants, the jury could find that there was such delivery of the deeds as to constitute a valid transfer of title. The property was handled by the grantor during his lifetime in the same way and manner as the property deeded to the grandchildren, about the delivery of which, there is no question raised. And as to those deeds, admittedly, the grantees never saw or heard of the deeds to them—at least until trial, and no evidence they heard it then. The only evidence against a delivery is that of defendant, Marie; her evidence and conduct throughout the whole period may have impressed the jury to disbelieve her testimony with respect to what was said and done with the "43" deeds at the time of execution of those deeds and thereafter. The jury may well believe therefrom that all things which happened after the execution of the deeds were manipulations of Marie from motives of her own. She played an active role in the terms and making of the "47" Will at a time when, to quote her brief, "the deceased was very ill." That was following his severe stroke. Then, in February, 1949, the deeds upon which defendants rely were executed. To quote again from appellants' (defendants') brief: "The deeds were absolutely and unconditionally delivered to defendant Johnson who was instructed to record their deed, and to hold Renny's deed until after the death of deceased." That is exactly what plaintiffs claim was ordered done with the "43" deeds. The day before the grantor died, defendant recorded her deed; then after grantor's death, instead of obeying what she claims were her instructions from deceased, she turned Renny's deed over to her lawyer, with orders not to let Renny have it until he executed to her a quit claim deed to all the property purportedly given to her in her "49" deed, and kept it until produced and tendered in court at the first trial. After the execution of the 1949 deeds, defendant burned a number of old deeds, including the

"43" deeds and the Will. The jury might believe that was an attempt to remove evidence which otherwise might be embarrassing later. Furthermore, at the time George received the Christensen place, defendant was up in arms for fear George might have designs and get more of the property, although she knew he was still getting only what the "43" deed provided. The trial court accepted and followed the findings of the jury. We see no reason why we should disturb these findings.

The question is not: Would the court have come to the same conclusion as the jury, but is there any substantial evidence from which the jury could come to the conclusion it reached.

Since the jury, considering the whole record apparently disbelieved the story and contentions of defendant and believed the contentions of plaintiffs as to the 1943 deeds, and the trial court who had heard the case twice, approved the jury's findings and entered judgment accordingly, we are neither impelled nor inclined to disturb the same. The 1943 deeds being valid and effective as conveyances, it is not necessary to consider the other assignments.

We may add that we also deem the evidence ample to justify and sustain the Finding of the incompetency of deceased at the time of the execution and delivery of the 1949 deeds.

The judgment appealed from is affirmed. Costs to Respondents.

McDONOUGH, CROCKETT and WADE, JJ., concur.

WOLFE, C. J., does not participate herein.

HENRIOD, J., having disqualified himself does not participate herein.